## DOANE, WARBURTON & KING vs. NEWMAN.

A promise by A. to pay a freight bill given to B., and by B. transferred to C. in consideration that C. would incur a liability for B., is upon a sufficient consideration, and need not be in writing.

APPEAL from St. Louis Court of Common Pleas.

SPALDING, *for the Appellants, insists* :

1. The instructions given for the plaintiff below were erroneous as they lay down the proposition, that an act of one party is a good consideration for the promise of another, although the promise was not made with any reference to such act. This instruction does not require that defendants should have made their promise, in consideration that Newman would *go* security for O'Farrel. It is a past consideration. Powell on Contracts, 209—10—11.

2. The error in those instructions is not aided by the instructions subsequently given.

3. The fourth instruction for defendants was improperly refused. Warburton & King are charged as having assumed to pay the liability of O'Farrel, which is required to be in writing in order to be binding.

4. The verdict was against evidence and the weight of evidence.

1st. The whole testimony as to the promise of the defendants to pay the freight bill to plaintiff is in O'Farrel's deposition.

2nd. The most favorable view for appellee of that testimony is, that it leaves the matter entirely in the dark, whether the promise was made in consideration that Newman would go security or not.

3rd. And in this case where the witness was not personally present, this Court can as well judge of the weight of testimony as the jury, especially as there is only one witness, and the only question is, *what he says,* taking his whole statement together.

4th. His first statement in the narrative part of the deposition makes the promise of defendants below subsequent to Newman's giving the security.

5th. And the only instance where he intimates any thing to the contrary is, in answer to a leading question informing the witness what he was desired and expected to state.

6th. The witness was brought to St. Louis at Newman's expense, and boarded by him, and shows otherwise in his deposition a manifest bias in favor of Newman, who had also forgiven him his claim on him for the security debt.

The result of his statement is, that he asserts both ways, under such circumstances that more confidence is to be reposed in his first assertion, which came out without prompting or solicitation than in the other. He first states in the narrative part of the deposition, that the defendants promised to pay the freight to Newman, and they made that promise because he, O'Farrel, pressed them to do so, as Newman *" had become security for deponent," &c.* Afterwards, the counsel put a leading question, to which he replies hesitatingly, showing that he scarcely dared to say it, *that he should say, "* that Newman did become security in consequence of the understanding with defendants to pay," &c.

On this state of facts, the appellant contends that the jury had no better opportunity of judging of the weight or meaning of the testimony than the Court, as to this point. It was all in writing, and the witness was not present. The burden was on the plaintiff to prove that Warburton and King, in consideration that, he, Newman, would become security for O'Farrel, promised to pay the freight bill to Newman. Unless this were proved, there was no consideration for the promise, and the plaintiff was bound to prove this, as the burden was on him to prove the contract to be binding in law, which it would not have been without a proper consideration. If Newman had gone security for O'Farrel on the Attachment Bond, without the privity of Warburton & King, and then had gone with O'Farrel to Warburton & King and they had promised to pay the freight bill to him, it would have been entirely without consideration, for the freight bill would be due to O'Farrel; the bill of lading had been signed, so that the contract for carrying the goods was complete, and the agreement to pay the freight therefor is in writing, and appears on the face of

the bill of lading, and as soon as earned, it would have been due to O'Farrel. His order in favor of Newman could not transfer it so as to be suable in Newman's name, unless it be a bill of exchange, and had been accepted by Warburton & King. If it were a bill of exchange, it had not been accepted, because our Act of Assembly (see Rev. Code of 1835, page 97,) requires an acceptance to be in writing. The whole question, therefore, turns on the consideration of the promise.

Powell on Contracts, says, page 209, "If a consideration is executed, and does not go along with the contract, but is entirely past, and the contract is merely subsequent, it is not a sufficient consideration," as "where a master has promised two men, that in consideration they had bailed his servant out of prison, he would save them harmless, it was held that this did not bind him."

If, however, there be a duty or moral obligation before, a promise on a past or executed consideration will bind. Powell on Contracts, 211; as a promise to pay a debt barred by the statute of limitations.

And a consideration *past*, will be sufficient to maintain an action on a *subsequent* promise, where the consideration is alleged to have been at *the defendant's request.* Powell, 211—212.

In the present case the Court instructed, that a consideration was sufficient, *when made without any consideration*, if the promisee on the faith of the promise, incurs expense or enters into a liability; that is, I promise to give a man a hundred dollars; on the faith of this he buys a suit of clothes, and not paying, is sued and compelled to pay; he then turns round and sues me for the $100, and alleges that it is a binding promise, for the consideration of his having suffered by means of my promise; when his purchasing the clothes was without my request or even my knowledge.

CROCKETT & BRIGGS *for Appellees.*

NAPTON, J., *delivered the opinion of the Court.*

This was an action of assumpsit brought by Jonas Newman, against John Warburton, Hezekiah King, Wyllys King and Job P. Doane, composing the mercantile firm of Warburton & King. The first count in the declaration averred, that the defendants contracted with one William J. O'Farrel, master and owner of the steamboat Constellation, that if he would convey certain merchandize from St. Louis to New Orleans, safely and securely, and there deliver the same to them, they would pay him as freight therefore the sum of $545 95 at the city of St. Louis,— that said steamboat having been arrested at St. Louis—O'Farrel agreed with the plaintiff Newman, that if he would become security and release said boat from arrest, he said O'Farrel would give his order on the defendants for the amount of said freight, and that he should receive and hold the same as collateral security—that the defendants had notice of this arrangement, and agreed to pay said freight over to Newman, in consideration of which promise of the defendants, he, Newman, became security for the boat, received from O'Farrel an order for said freight on defendants, who then promised to pay the freight to him as soon as it should have been earned by the delivery of the goods at New Orleans,

according to the bill of lading. It is further averred, that the freight was earned, and that demand was made on the defendants for it, and they refused to pay. The second count of the declaration is framed on the order, alleging they had promised to pay it, &c., and the third count is on account stated. The plea was non assumpsit, and a trial was had, which resulted in a verdict and judgment for Newman, from which the defendants appealed.

Upon the trial the plaintiff gave in evidence the bill of lading, dated 8th April, 1841, stating the goods shipped by Warburton & King to be delivered at New Orleans unto Charles Doane, or his assigns, the shippers paying freight at the rate of twenty cents per 100 lbs., &c., all payable on return of the boat to St. Louis, or return of bill of lading duly receipted by consignee. At the foot of the bill of lading was the following memorandum: "Received from steamer Constellation the property specified in the above bill of lading, and have drawn on shippers in favor of R. W. Wood, Clerk of the Constellation, for $504, under this date. No. 128—say barrel pork (in dispute) not delivered, and one pig lead short. New Orleans, April 23, 1841. CHARLES DOANE."

The plaintiff also gave in evidence the record of a suit in the said Court of Common Pleas in favor of Daniel Murphy, against William J. O'Farrel, commenced on the 7th April, 1841, by attachment, which was levied on the Constellation on the 8th, and was released by O'Farrel giving bond with Jonas Newman as security on the 9th of the same month; judgment was finally entered in this case against O'Farrel and Newman on their bond, for the amount of which, $660 90, an execution issued on the 2nd May, 1842, which was returned satisfied by Newman by the Sheriff.

The principal witness in favor of the plaintiff was O'Farrel, whose deposition had been taken. The contract between O'Farrel and Warburton & King, in relation to the freight, was proved by him, about as stated in the declaration; and after that contract was made and the attachment levied on the boat, he (witness) applied to Newman and requested him to go his security, which he agreed to do, provided he would give him an order for the freight bill upon the defendants. Thereupon the order was given and witness and Newman then proceeded to the store of defendants, and deponent requested Mr. King, one of the firm, to pay over the freight to Newman—thinks the order was exhibited—Mr. King acceded and said the money should be paid to Newman when the freight was earned. Witness then stated to King particularly, the reason why he desired the freight paid over to New-

*Doane, Warburton & King* vs. *Newman.*

man, viz: that he had been sued and Newman had become his security for an amount which the freight bill would about cover. Witness then desired the bills of lading to be altered, so as to make them payable to Newman, but King said in reply, that it would make no difference—he had already sealed his bill of lading, and it was unnecessary—the money should be paid to Newman. Upon further examination witness stated that he understood that Newman became his security in consequence of this understanding with King, &c. He further states that he never authorized any other person to receive the freight—that Robert Woods, then acting Clerk of the boat, was notified of the transaction. There was much testimony elicited by the cross-examination of said witness, which has no particular bearing upon the case, except as it was designed to impeach his credibility, and to prop the testimony of R. Woods, the Clerk. The deposition of Woods, which contradicted that of O'Farrel's in several particulars, was rejected—he being the Clerk who had collected the freight and made use of it.

Harrington testified that he knew O'Farrel gave an order to Newman before said bond in the attachment suit was executed—that he saw the order written before the bond was signed, and it was given on the condition agreed on between O'Farrel and Newman that the said freight bill should cover the bond: that he (witness) presented said order to one of the defendants, who refused to pay it, saying he was sorry Newman must lose it, but that they must pay the draft of Charles Doane, which they should have to pay to protect said Doane's credit, who was their agent, &c.

The defendants gave in evidence the draft of Charles Doane for said freight on the defendants in favor of said Woods for $504, dated 23rd April, 1841, stating on its face that it was for the freight which was endorsed in blank, and on which was a receipt of payment from the defendants.

The Court gave the following instructions for the plaintiff:—

I. That if the defendants promised the plaintiff with the consent and privity of O'Farrel, to pay to the plaintiff the amount of the freight bill, and upon the faith of that promise the plaintiff became bound as the security of O'Farrel, and has since been compelled to pay the debt for which he became security; this was a sufficient consideration to support the promise.

II. That any advantage to the defendants, or loss to the plaintiff, growing out of the promise, was a sufficient consideration in law to support the promise.

The defendants asked four instructions, the three first of which were given, and the last refused.

I. That the promise of the defendants to pay said freight bill to Newman was void in law, unless based on a good consideration.

II. That if the promise of the defendants to pay the freight bill to Newman was made after Newman had become security for O'Farrel upon the bond given in evidence, then such entering into security by Newman has no sufficient consideration to support the promise of the defendants.

III. That plaintiff cannot recover in this action unless the jury find from the evidence that defendants promised to pay Newman the freight in question, in consideration that Newman would become security for O'Farrel.

IV. That if the defendants did not assume in writing to pay to plaintiff the freight bill, there can be no recovery.

Exceptions were taken at the trial to the exclusion of Woods's deposition, the giving instructions of plaintiff, and refusing the fourth one asked by defendant. Motion for a new trial was made and overruled.

The only points which have been discussed by the appellants are, first, the propriety of the instructions; and, second, the correctness of the verdict, which the appellant contends is against the weight of evidence. The exclusion of Woods's deposition on the ground of interest, though excepted to at the trial, has not been urged here.

The first instruction is objected to because it admits the inference that the promise of the defendants would bind them if upon the faith of that promise the plaintiff incurred the liability in question, although the promise was made without any reference to such act of the plaintiff, in other words, the defendants conceive the instruction to sanction the idea that a past consideration will sustain a promise although there may be no moral obligation upon the person promising to perform the act promised. It may be conceded that such an interpretation might be placed upon this instruction, though we do not think it the most natural construction of the language of the Court, or one at all likely to occur to a jury unused to the distinction between executory and executed considerations. If it were liable to this construction, the third instruction given at the instance of the defendants, is so plainly expressed as to leave no room for misunderstanding the meaning of the Court. This last instruction is not inconsistent with the one first given at the instance of the defendants, but is only more specific and explanatory of the general proposition contained in the first. The instructions taken altogether

were not likely to mislead the jury, especially as the point giving occasion to the criticism upon the first instruction, is one about which there was a conflict of testimony, and to which, therefore, the attention of the jury must have been mainly directed by the counsel who argued the cause.

In relation to the second point, we confess our inability to see any grounds upon which the Court could with propriety interfere with the verdict. Apart from the general objections entertained by the Court against disturbing the verdicts of juries where the law has been fairly and fully expounded to them, we have not found in the testimony detailed in the bill of exceptions anything to induce a conviction that the verdict in this case was not well warranted by the proof. It is true that the evidence of O'Farrel, upon which the jury must have mainly relied, was that of a partial witness; and it is also true, that his first account of the transaction between him and the plaintiff seemed to countenance the idea that the plaintiff had executed the bond before the order upon the defendants was accepted, but this statement is corrected upon further examination, and the transaction as he states it, carries intrinsic evidence of its own probability, apart from his positive assertions. Without entering into any particular examination of the evidence, we think the details given in the statement of the case will show that the verdict is warranted by the facts proven. We shall, therefore, let it stand.

Judgment affirmed.