### BRANT vs. HIGGINS.

1. In an action for a malicious arrest, the verdict of a jury in the case in which the arrest was made, though competent evidence for plaintiff to shew the want of probable cause, yet it is not of equal weight with a discharge by the examining magistrate in a criminal case, nor to the refusal of a grand jury to find an indictment. The weight to be given to the verdict as evidence, must depend upon the circumstances attending its rendition.

2. Although the want of probable cause is a question of law, the jury must decide upon the evidence of the facts which establish such want.

## APPEAL to St. Charles Circuit Court.

GANTT, *for Appellant, insists:*

1. The seventh instruction asked by plaintiff, and given by the Circuit Court, was erroneous.— It confounds the verdict of a jury in a civil case with the refusal of a committing magistrate to hold an accused person to bail, and further directs the jury to infer, not only absence of probable cause, but the existence of corrupt motives in the appellant.

2. The ninth instruction asked for by the plaintiff below, and given by the court, was erroneous. It could not but mislead the jury, to be told that Brant could have permitted Higgins to go to his child's funeral in custody of the sheriff, without impairing his rights. If the arrest is to be governed by the rules of final process, it was not true at all that Brant could assent to Higgins' discharge, without prejudice. If it is to be governed by the rules regulating mesne process, Brant could not have *permitted,* &c., for he had no power to *forbid.* It is error to accompany a correct refusal of an instruction with remarks which may mislead a jury. Beehler vs. Coonce, 8 Mo. R.. 247. How much more then to *give* an *instruction* which cannot fail to have that *effect.*

TODD, *for Appellee, insists:*

1. Instructions Nos. 1, 2, 5, 6 and 7, on behalf of Higgins, and Nos. 1, 2, 3 and 4, in behalf of Brant, present the law as fully and as favorably for Brant as the authorities warrant. 2 B. & C., p. 693; 9 Eng. Com. Law Reps., p. 225; 2 B. & A., p. 179; 22 Eng. C. L. R., p. 53; 5 Taunt., p 277; Starkie on Evidence, p. 489; 8 Mo. R., p. 339; 12 Pick., 324; 3 Mason's Rep., 105. As to kind of malice, 2 Saunders on Evidence and Pleading, p. 659; 3 Mason's Reps., p. 104. Although a party has cause of action, yet he may be liable in this action by abuse of remedies, and oppression, as by excessive bail. 4 Serg. & Rawle, 23; 9 Ohio R., 105; 2 Tuck. Com., p. 63; 2 Wilson, p. 305, per Lord Camden. Acquittal, evidence of want of probable cause; and slight additional evidence only needed on the part of the plaintiff. 6 Bing., 183, or (19 Eng. C. L. R., p. 47, 50;) 8 Mo. R., 339. And a party is less favored in a civil than in a criminal prosecution. 2 Saun. on Evidence and Pleading,; 24 Pick., 81, 86. Malice may be inferred from want of probable cause. 5 Taunt., 583; 1 T. R., p. 544 and 545; 9 East., 351; 12 Pick., 81, 87; 3 Mason, 102; 6 Bing., 183; (19 Eng. C. L. R., 47, 50) 1 Stewart, 19; 2 Tuck. Com., p. 64.

2. Instruction No. 4, as to action of detinue, was rightly given. 3 Black. Com., p. 151; 1 Chit. Pl., 138, 139; 2 Dana's R., 332; 2 Tucker's Com., p. 80.

3. Instruction No. 10, as to action of replevin, was rightly given.   Rev. Code of Mo. 1835, p. 527, sec. 1.

4. Instruction No. 9, as to letting Higgins attend the funeral of his child, in the custody of the sheriff, was rightly given.   3 Black. Com., p. 290, 415; 2 Saund. R., p. 61, a n. 4; 5 J. R. Rep., 182; 10 J. R. Rep., 420; 2 Rawle, 284.

5. The amount of damages is not excessive, and is no cause for a new trial.   2 Dunlap's Prac., p. 680; 2 Tidd, p. 940; 9 J. R., 45; 10 J. R., 443; 2 Pick., 113, 119; 7 do., 82, 85; 16 do., 541, 547.

6. The remark of one of the jurors was no cause for a new trial.   Besides, no exception was taken to their retiring again, after it was made.   5 Mo. R., 525; 14 Pick., 236; 5 Binney, 340; 4 Wash. C. C. Reps., 32; 2 Black., 114; 4 H. & M., 1, 18, 19, 20, 21 and 22; 1 Cow., 221, 243; 3 do. 355; 5 Taunt., 277.

7. The court properly refused instruction No. 6, of appellant, because not applicable to the evidence.

NAPTON, J., *delivered the opinion of the Court.*

This was an action for a malicious arrest, brought by Amando Higgins against the appellant, Brant.   The suit was commenced in 1844, in St. Louis county, but in consequence of the fact that the Judges of the Court of Common Pleas and Circuit Court had been of counsel for the parties, it was removed to St. Charles, and tried there.   The plaintiff got a verdict for $4000, and a judgment thereon.

It will be necessary, to an understanding of the points of law on which this case turns, to give a somewhat detailed statement of the testimony.

The plaintiff introduced a record of a suit in detinue, from which it appeared that Brant, on the 27th October, 1842, filed a declaration in detinue against Higgins, alleging the detention of goods specifically enumerated to the value of $3000.   This declaration was accompanied by an affidavit on the part of Brant that the property described in the declaration belonged to him, and that it was worth at least fifteen hundred dollars, and that Higgins unlawfully detained the property from him.— A *capias* issued, and Higgins was arrested on the 27th October, 1842, and finally gave bail in the sum of $3000, on the 4th of November, 1842. The cause was prosecuted until February, 1844, when a jury was summoned, and the plaintiff took a nonsuit.   The bill of exceptions taken in this suit of detinue gives the following statement of the occurrences at the trial.   The plaintiff (Brant) produced a mortgage from Van Hollis Higgins to himself, which, in consideration of $500 advanced by Brant to the said Van Hollis, conveyed to him, Brant, all the goods, wares and merchandize then in the store occupied by him, the said Van Hollis, and particularly enumerated in a schedule annexed to the deed.

47

It was expressly stated in the deed, that Van Hollis H. was to retain possession and carry on his trade as usual, but that if any other creditor attached, Brant was to take possession. It further appeared from the bill of exceptions, that the plaintiff was compelled to take a nonsuit, because of his inability to prove the execution of this mortgage by a subscribing witness. This nonsuit was subsequently set aside, and the cause was removed to St. Charles county, where a trial was had, and a verdict rendered for the defendant. No bill of exceptions was taken on this second trial.

*J. M. Krum,* who had been counsel for Higgins, testified, that he became acquainted with Higgins in the summer of 1842; that in October of that year, he was sent for by Higgins, who was then in jail. He examined the papers in the action of detinue, and explained the character of the action to Higgins, and told him he could get his release by giving bail. Higgins stated that he was a stranger, just set up in business, and it would be difficult to procure bail, and enquired if there was no other way. Witness suggested a *habeas corpus,* grounded on a supposed defect of the affidavit, and accordingly a *habeas corpus* was sued out, but proved unsuccessful. The Judge of the Circuit Court was absent, and therefore no attempt was made to reduce the amount of bail required.— Witness applied to several persons on behalf of Higgins, but was not successful. After witness had been in jail several days, his child was taken dangerously ill, and for this cause, his exertions were renewed to get bail. Mrs. Higgins had not been informed of his arrest at first; they had not been married long. The child growing worse, propositions for a compromise were made by Higgins. All the parties met at the office of Blair & Gantt; the terms of the compromise were understood to be acceded to, when a paper was handed to witness by Brant's counsel, which purported to be a release from Higgins to Brant of all damages on account of the suit in detinue. The effect of this paper was explained to Higgins by the witness, and Higgins refused to sign the paper.— Brant insisted, and the whole matter of compromise failed, and Higgins was remanded to jail. The same evening, or the next morning, witness heard of the death of Higgins' child, and communicated the event to Higgins, who was greatly affected, and directed witness to pledge all his property in order to procure bail. This resulted in bail being procured on the 3rd November, 1842, some four or five days after the death of his child. Higgins then was released and attended the funeral of his child. He immediately left St. Louis, and has not since resided in this State.

*Sharp,* another witness for plaintiff, testified that he was the clerk in

the store of Van Hollis Higgins before the sale to Amando Higgins, (plaintiff;) that Beach's attachment was levied on about $3000 worth of goods, then in possession of plaintiff; that plaintiff paid the rent of the store to Brant, after the sale from Van Hollis to plaintiff. After the attachment of Beach, the plaintiff continued to do business on the stock remaining, which was worth perhaps $1200. After the trial upon the interpleader of plaintiff, which terminated favorably to the plaintiff, the goods were returned, and witness was in the act of taking them out of the boxes, when Brant, who lived on the same square, called at the store and claimed the goods as his. High words passed between plaintiff and defendant, and defendant left the store. Witness then, at the request of Higgins, procured a copy of Brant's mortgage, and, in conjunction with a son of Brant, compared the goods in the schedule with those in the store, and found no goods in the store corresponding with those in the schedule, and informed defendant of this. The defendant replied that he claimed all the goods in the store, by virtue of the mortgage; that if they were not the same, they were purchased with the proceeds of the sales of the mortgaged goods. Witness came into the store of Van Hollis H. in February, 1842. About fifteen hundred dollars worth of goods were purchased on credit by Van Hollis of Beach and others, and added to the stock. Witness knew that plaintiff had furnished his brother, Van Hollis, with about fifteen hundred dollars worth of goods, in the fall of 1841. After the death of plaintiff's child, witness made application to defendant, on the part of plaintiff, for permission to plaintiff to attend the funeral in custody of the sheriff. Brant gave witness a note to his counsel, who replied in writing. When this reply of counsel was carried by witness to Brant, the latter, after reading it, declined giving the desired permission. In the assignment made by Van Hollis to his brother, no provision was made for any of his other creditors.

*Russell Higgins*, a brother of Van Hollis and Amando, testified in relation to the debts due by Van Hollis to his brother, the plaintiff, and also in relation to his unsuccessful attempt to procure bail. He stated that one individual to whom he applied, (Coleman) told him he had received an anonymous note warning him to keep clear of the affair, as it was a swindling concern.

*Coleman* stated that he had received a note, which he had lost or mislaid, purporting to give Brant's side of the case, and warning him not to go bail for Higgins, as it was a swindling concern. He had no knowledge of the hand-writing. He was with Brant a day or two after he had received the note, and upon a conversation arising about the Higgins,

he, Brant, told him it was well enough he had declined, as he would probably have lost by it.

*Montgomery Blair* testified on behalf of the defendont, that he was counsel for him, and advised him to institute the action of detinue, upon the facts disclosed to him, which were the deed of trust, the note, and the attachment of Beach. Witness was of opinion that the sale from Van Hellis to Amando was fraudulent, and did not know that Van Hollis was under age when this deed was made. This information he received from plaintiff, but he did not credit it.

. *T*. *T*. *Gantt* was also of counsel for Brant, and stated the particulars of the consultation between Brant and his counsel, and that they advised the action of detinue, notwithstanding that Brant suggested and seemed to prefer *replevin*.

The court gave the following instructions to the jury, at plaintiff's instance:

1. The defendant, in order to shield himself on the ground that in bringing said suit in detinue, he acted in good faith upon the advice of counsel, he must show in evidence that, before the suit, he fully and fairly stated to his counsel all the facts and circumstances material for counsel to know to enable them to form an honest and a sound opinion upon the case. Therefore, unless the jury believe from the evidence that the defendant, before said suit, did so state his case to his counsel, they cannot find that he acted in good faith upon the advice of counsel.

2. And even if a person does prove that he did fully and fairly state his case to his counsel, and then proceeded by his advice thereon, this ought not to avail, if the jury believe from his conduct throughout that he did not act in good faith.

3. If the jury find for the plaintiff, he will be entitled to recover such damages as the jury shall believe from the evidence he suffered by reason of the suit in detinue; and in addition thereto, the jury may add such further amount, by way of smart money, as they may think, from all the circumstances, the defendant should be punished with.

4. The action of detinue will lie only for particular and specific personal chattels, which are capable of being pointed out and identified, so that the claimant can show them, and the person charged with detaining them can, on demand therefor, deliver them.

5. If the jury believe from the evidence that the arrest of the plaintiff by the defendant in his suit in detinue given in evidence was without probable cause, and malicious, they ought to find for the plaintiff.

6. There are two kinds of malice, malice in fact and malice in law; the

former, in common acceptation, means ill will against a person, the latter a wrongful act done intentionally. If, therefore, the jury believe from the evidence that the defendant in said suit in detinue was moved thereto by ill will against the plaintiff, or that said suit was wrongful and intentionally brought, they ought to find that the arsest in said suit was malicious.

7. The verdict for the plaintiff in said suit in detinue is evidence that said suit was wrongful and without probable cause, and but slight additional evidence thereto is required to prove it.

8. It is lawful for a failing debtor to prefer one creditor to all others, although it takes all his means.

9. Brant could have permitted Higgins to have attended the funeral of his child, in the custody of the sheriff, without, by that act, causing any prejudice to his rights in his action of detinue.

10. If Brant was entitled to take possession of the goods mentioned in his suit in detinue by reason of the attachment of Beach, he could have sued in replevin.

11. If the jury believe from the evidence that said suit in detinue was without probable cause, they may infer therefrom that it was malicious.

The court also gave the following at the instance of defendant:

1. The jury are instructed as follows: Two things must concur to render a defendant liable in an action for malicious arrest; 1st, there must be malice on the part of the defendant; 2nd, there must be want of probable cause. One of these ingredients is not sufficient, unless the other be present also.

2. If the jury believe from the evidence that the defendant had probable cause for commencing the action of detinue against A. D. Higgins, they must find for the defendant.

3. If they find from the evidence that the defendant, before commencing proceedings against the said A. D. Higgins in detinue, took the advice of counsel upon a full and fair statement of his case, and acted in good faith pursuant to the advice given to him by said counsel, they must find the defendant not guilty.

4. If they believe from the evidence that the said Brant acted mistakenly, but without an intent to oppress the said Higgins by the abuse of legal process, they must find for the defendant.

5. There is nothing in the nature of the action of *detinue* which is inconsistent with its being brought to recover such articles as are enumerated in the declaration in detinue in the case of J. B. Brant vs. A. D. Higgins.

The court refused to give the following, which the defendant asked:

6. In the case of Joshua B. Brant against Amando D. Higgins, if the plaintiff, Brant, had *consented* that the defendant should go out of the custody of the sheriff, it would have been a voluntary escape, and the defendant could not be retaken.

The only errors insisted on are the seventh and ninth instructions.

The seventh instruction is "that the verdict for the plaintiff in said action of detinue is evidence that said suit was wrongful and without probable cause, and but slight additional evidence thereto is required to prove it." This instruction seems to have resulted from confounding the action for a malicious arrest with the action for a malicious prosecution. The verdict of a jury, upon the trial of a civil action, is essentially different from the discharge of a supposed criminal by the examining magistrate, or upon a bill of indictment ignored by a grand jury. Even in a criminal proceeding, the final acquittal of the accused can have but little weight as evidence of probable cause, compared with an acquittal or discharge before the magistrate or grand jury. The magistrate and the grand jury have the very question of probable cause to try; the evidence on the side of the prosecution is alone examined, and the proceeding is entirely *ex parte*. Under such circumstances, the refusal of the examining tribunal to hold the accused over to trial, must necessarily be very persuasive evidence that the prosecution is groundless. But this would not be the case with a verdict of acquittal, after a full investigation of the case, and an examination of the testimony on both sides; much less would it be so in a civil proceeding. It would be hard if every suitor who fails to recover, whether upon technical grounds or on the merits, should, for such failure, be presumed to have instituted a groundless action. The result of the action may depend upon facts and contingencies which no skill or foresight, however honest and persevering, could anticipate or prevent. The verdict for the defendant is competent evidence, but its weight must necessarily depend upon the circumstances attending the trial, and the manner in which it is rendered. Thus, if a jury should render their verdict from the jury box, without deliberation, this would be a circumstance to give weight to that verdict, as evidence of the want of probable cause. The remarks of this Court in the case of Williams vs. Van Meter, (8 Mo. R., 342) must be understood in connexion with the facts upon which they were based. That was an action for a malicious prosecution, and the plaintiff had been discharged by the committing magistrate. Although that discharge was not regarded as sufficient *of itself* to establish the want of probable cause, yet it was con-

sidered as evidence of such a character as to require but slight additional evidence to make out the plaintiff's case. But these observations of the Court in that case would be very inapplicable to a verdict by a petit jury in a civil case. Wengart vs. Benshore, 1 Penn. R., 232; Sterling vs. Adams, 3 Day R., 411; Ray vs. Law, 1 Peter's C. C. R., 206. Besides, the remarks of this Court in the case just alluded to, were evidently not designed to indicate a rule of evidence for the guidance of a jury.

It is the province of the jury to decide upon the weight of evidence and the credibility of the witnesses. For this reason alone, the seventh instruction is erroneous.

It is however suggested, that this error should form no obstacle to an affirmance of this judgment, because the question of probable cause is a legal one, and the proof on the record shows a want of probable cause. It is true, that what constitutes probable cause has been determined to be a legal question, but the jury have still a right to pass upon the facts. Where the facts are controverted, or the credibility of the witnesses is to be determined, the evidence must go to the jury. Martin vs. Deys, 2 Wend., 424; Gorton vs. De Angelis, 6 Wend., 418; Burlingame vs. Burlingame, 8 Cow., 142; French vs. Smith, 4 Ver. R., 363. And this was the course of the Circuit Court in most of the instructions given in this case. Hence, the jury were told that the action of detinue could be maintained only for specific chattels; and there was evidence to show that the goods in possession of Amando Higgins were not the same goods which had been mortgaged by Van Hollis Higgins to Brant; but the weight and credibility of this testimony was left to the jury. We cannot undertake to conjecture on what point the case turned with the jury, nor what influence the seventh instruction may have exercised upon them.— The instruction was upon a material point in the case, and though it would seem to have been superfluous, it may not have been harmless.

To the ninth instruction, we perceive no substantial objections. It is abstractly correct, and the principal objection to it is, that it left in the power of the jury an inference that Brant's consent was *necessary* to authorize the sheriff to accompany Higgins to attend the obsequies of his child. Such is not a necessary inference from the instruction, and if it were, the counsel could have had the additional explanation given. The counter instruction asked was not law, and if it were, it was inapplicable to the testimony.

We shall remand the case for a new trial. The other judges concurring, the judgment is reversed.