A. C. PETERSON, RESPONDENT, v. FRED W. FLEMING ET AL., APPELLANTS.[*]

Kansas City Court of Appeals. June 27, 1927.

. *Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 1585, p. 1409, n. 30; 4CJ, section 1961, p. 332, n. 56; section 2708, p. 764, n. 80; section 2834, p. 853, n. 59; section 2847, p. 872, n. 19; False Imprisonment, 25CJ, section 31, p. 464, n. 41; section 34, p. 469, n. 88; section 156, p. 547, n. 21; section 160, p. 551, n. 60; section 178, p. 564, n. 18; section 186, p. 568, n. 86; Malicious Prosecution, 38CJ, section 68, p. 425, n. 9; section 102, p. 449, n. 64; section 103, p. 451, n. 84; section 194, p. 504, n. 25; section 195, p. 505, n. 32; section 197, p. 507, n. 40; Trial, 38Cyc, p. 1489, n. 7.

*Darius A. Brown* and *Prescott Brown* for respondent.

*Charles L. Carr, Ben L. White* and *E. E. Ball* for appellant.

ARNOLD, J.—This is an action in damages for alleged false arrest and malicious prosecution. At the time of the occurrence out of which this action grew, defendants were the duly appointed and acting receivers of the Kansas City Railways Company.

On June 27, 1924, between midnight and one o'clock A. M., employees of defendants in charge of a tower truck were crossing the Paseo on Ninth street going west, at a speed estimated at fifteen to twenty miles per hour. The night was dark and rain was falling. The Paseo is a wide avenue running north and south, and crosses Ninth street at right angles. The Paseo at the point of intersection had a parkway about forty feet in width running down its center. The distance from the west line of said parkway to the west curb line of the Paseo is about forty feet. The crew in charge of the tower truck, at about the time they reached the east line of the parkway, saw an automobile coming from the north between 8th and 9th streets, the distance between 8th and 9th streets being approximately 200 to 250 feet; the auto about midway between the two streets when first seen by the truck crew, and was being run on a slight down grade at about twenty miles per hour, as shown by plaintiff's evidence. It was occupied by plaintiff, who was driving, three ladies and another man, one of the ladies occupying the front seat with the plaintiff.

The truck proceeded across the west side of the Paseo, and before it had succeeded in crossing, the automobile driven by plaintiff struck it at or near the rear right wheel, and knocked or slid it some distance to the southwest, causing it to strike the south curb on 9th street and turn over against an electric light pole, which was broken by the impact.

Plaintiff and one Edward Hanson, the other man in the automobile, aided in extricating one of the defendants' employees from the wrecked truck under which he had been pinned.

Within a short time after the accident two uniformed police officers of Kansas City, Missouri, arrived on the scene, one of whom asked who had been driving plaintiff's car, and plaintiff answered that he was. The officer then asked his name and address which were given, together with the names and addresses of the other occupants of the automobile. Testimony in defendants' behalf is to the effect that one

of the policemen told plaintiff that he wanted him and for him not to go away. The testimony in this regard is to the effect that plaintiff asked the officer what he thought of the accident. The said officer thereupon asked plaintiff some questions involving the direction he was going, how fast he was driving, to which last indicated question, plaintiff answered, "about twenty miles an hour." The officer, testing the oily, wet boulevard with his foot, said; "I don't know, I don't see how those fellows have a chance," pointing to the crew of the truck; that plaintiff then asked if he (plaintiff) were going to be arrested and the officer told him, No. The officer then directed plaintiff to have his car towed to a garage of his own choosing. Plaintiff's companion, Hanson, was present at this conversation.

Plaintiff's testimony shows the police officers were pleasant and offered to help the party in any way possible.

Shortly thereafter an inspector and special officer of the railway company arrived on the scene. It appears that the said special officer talked some ten or fifteen minutes with the city police officer, out of hearing of the plaintiff, and at the end of said conversation, the policeman walked over to plaintiff and in a rough manner said; "Where is the guy that was driving that car?" Plaintiff said, "Right here." The policeman then said in a loud, gruff voice, "I am going to have to take you to the station."

It appears that at about this juncture, the tow car which the plaintiff had ordered, arrived. The police officer then said, "You can't take this car, this man is under arrest and this car is going to be the property of the city as long as this man is under arrest, so it will have to go to the Down Town Garage."

It further appears from plaintiff's testimony that after the conversation between the policeman and defendants' special officer, the demeanor of the policeman toward plaintiff changed from one of pleasant courteousness to one of harshness. To use plaintiff's expression, they became "hard-boiled;" that they treated him roughly, grabbed him by the arm, taking him to where the police car was standing. Plaintiff asked if the other fellows would be taken down also, to which the police officer replied, "No, that other officer will take care of them," pointing to defendants' special officer.

A large crowd of people gathered at the scene, and jeered and laughed at plaintiff as he walked across the street, the policeman holding him by the arm. It appears that plaintiff had never before been arrested; he was thirty-one years of age and had been in the employ of the Kansas City Elevator Manufacturing Company since 1911, with the exception of one year when he was in the World War; that he lived with his mother and sister. It appears that plaintiff's companion, Hanson, went with plaintiff to police headquarters for the purpose of signing plaintiff's bond.

On arriving at the police station, plaintiff was searched, his personal effects taken from him and he was locked in a room therein; that the room was filthy, and plaintiff was neither permitted to give bond nor communicate with relatives or friends; that the plaintiff's treatment by the police and booking officers was one of extreme harshness and discourtesy. Plaintiff was informed that he was being held "for investigation," and would not be permitted to give bond. The evidence shows that when Hanson suggested he would sign plaintiff's bond, he was told by a police sergeant, "You get the hell out of here, or I will lock you up too."

Plaintiff was then placed in a room, into which other prisoners were thrust, from time to time. The room was filthy and filled with a stench.

Plaintiff testified that at about 8 A. M. on the following day, he was roughly taken by an officer and placed in the "show-up" room, which is explained to be a place where prisoners are viewed by detectives and others with the purpose of determining whether the person so viewed is a criminal of record within the knowledge of the viewers. The "show-up" room is so arranged that the supposed culprit is in a strong light, while those viewing him are in semi-darkness and hidden behind screens. After plaintiff had stood within this room for several minutes, an officer standing outside the window asked his address, where he worked and how long, if he drank, if he had ever been arrested, and if he was in the accident at 9th and Paseo with a truck belonging to the Street Railway Company. He was then informed he had been arrested the night before, charged with careless driving; plaintiff was then jerked, by an officer who had been holding plaintiff's arm, round the "show-up" room two or three times, and then returned to the cell. After the lapse of an hour, he was taken to a smaller room, where there were two drunken men asleep on the floor; that after a lapse of twenty or thirty minutes, plaintiff was taken into police court before Judge Kilroy, and while plaintiff was being questioned, a man engaged Judge Kilroy in conversation, after which the judge said to plaintiff, "Your case is continued until July 8th," on which date plaintiff again appeared in police court for trial. It is in evidence that during the trial one John Moberly, one of defendants' regular attorneys, appeared and examined the witnesses.

Judge Kilroy asked Moberly who he was, and Moberly replied, "I am representing the Street Railway Company," whereupon the Judge said; "Well, this case looks like an inevitable accident. One is just as much to blame as the other. The case is dismissed."

It is in evidence that for a period of two months after the arrest, friends and associates of plaintiff would comment to him about the matter and "razz" and jeer him, and even up to the time of the trial of this case, some of the plaintiff's acquaintances would say to him, "How is the old jailbird getting along?"

It appears also that four of the defendants' witnesses testified that they had met with one James Pollard, with whom they had talked the matter over, and he told them they would be called as witnesses, to protect the Railway Company; that they went over the matter together, with Pollard and in the presence of each other. The materiality of this evidence will appear in the consideration of the points raised in the appeal.

The petition charges:

". . . the defendants, through their agents, servants, employees and officers maliciously intending to injure the plaintiff in his good name and reputation, maliciously and falsely and without probable cause whatsoever, at their own instance caused and procured the plaintiff to be charged with the offense of investigation; that pursuant to the action and conduct of defendants through their agents, servants, employees and officers in so falsely and maliciously and without probable cause causing plaintiff to be charged with said offense, plaintiff was arrested by the Police officers of Kansas City, Missouri, and was by said Police officers incarcerated in the jail at Police Headquarters in said city at about 1:30 A. M. on said June 27, 1924, and was held as a prisoner in said jail and deprived of his personal liberty until ten o'clock A. M. on said June 27, 1924; that at said ten o'clock A. M. on June 27, 1924, the defendants, through their said agents, servants, employees and officers, maliciously intending to injure the plaintiff in his good name and reputation, falsely and maliciously and without probable cause whatsoever, at their own instance, caused and procured the plaintiff to be charged with the offense of careless driving in the North Side Municipal Court of Kansas City, Missouri."

The petition further alleged that on July 8, 1924, after a hearing in the North Municipal Court of Kansas City, Missouri, plaintiff was fully acquitted and discharged of said charge and by the court discharged, and that said prosecution was wholly terminated; and that said agents, servants, officers and employees of defendants, in causing the arrest and prosecution of plaintiff, were proceeding within the general scope of powers delegated to them by defendants, and were acting within the scope of their authority; that said arrest and prosecution were wanton and malicious, and without probable or reasonable cause; that thereby plaintiff had been brought into contempt and ridicule, greatly to the injury of his good name, fame and reputation. Judgment is sought in the sum of $5000 actual and $5000 punitive damages. The answer is a general denial.

The trial was to a jury, and a verdict was rendered in the sum of $500 compensatory and $1500 punitive damages. And judgment therefor was accordingly entered. Motions for a new trial and in arrest were overruled and defendants have appealed.

302

There was testimony introduced on behalf of defendant which was intended to show that defendants were in no way instrumental in causing plaintiff's arrest, and tending to show plaintiff was at fault in causing the collision. The case was contested throughout upon the ground that there was probable cause for the arrest.

Before proceeding to a discussion of the appeal on its merits, it is necessary to consider the point raised by plaintiff, in which an attack is made upon the sufficiency of defendants' statement and brief. It is charged the statement and brief fails to comply with either the letter or spirit of our rules 16 and 17, and the statutes, and that the appeal should be dismissed. It is charged the statement wholly fails to give the court any information as to the facts and circumstances involved in the arrest and imprisonment of plaintiff; that it is not such a statement as would give the court a fair understanding of the facts without going into the record.

We have read defendants' statement and brief, and are of the opinion that plaintiff's objections thereto are chiefly based upon the fact that said statement does not contain a statement of the facts as plaintiff would prefer them to be stated, but we find the court had no difficulty in grasping the substantial facts from a reading of defendants' brief and statement. The statement and brief do not offend in the manner charged, and the appeal will not be dismissed on the grounds charged.

In support of the appeal, defendants charge the court erred in refusing the peremptory instruction in the nature of a demurrer at the close of all the evidence. It is urged that the arrest was made by a police officer of Kansas City, and in this connection section 8930, Revised Statutes 1919, is cited to the effect that police officers are authorized "to arrest, on view, any person . . . whom they have reason to suspect of having violated any law of the State or ordinance of the city." Defendants urge that in making such arrest, the police are acting within their authority and that such arrest is lawful; that the arrest being lawful, of course, injures nobody, and hence, no one is damaged. We do not understand that plaintiff is disputing this plain, statutory and well-established principle of law. But to apply the same, there must be present in the case no modifying circumstances, as in the case at bar.

Plaintiff's testimony was to the effect that his arrest was brought about at the instigation and instance of defendants, after the arresting officer had stated there was no culpability in plaintiff in respect of the accident; and that thereafter a special agent or special officer had a talk with the arresting officer out of the hearing of plaintiff, and that thereupon and thereafter the arrest was made. It was further shown in behalf of plaintiff that an attorney representing defendants appeared in police court, and in their behalf aided in the prosecution of plaintiff.

It is probably not necessary for us to refer to the established rule of law that in passing upon demurrers we must accept as true the evidence in plaintiff's behalf, and to apply all reasonable inferences to be derived therefrom, and the whole matter viewed in the light most favorable to the cause of action; and if there is any substantial evidence supporting the verdict, a submission of the issues to the jury is not error. [Markey v. Kansas City, 286 S. W. 125; Sullivan v. Gideon et al., 271 S. W. 988, and cases therein cited.]

We cannot accept as correct defendants' position that the mere fact that the police officer had power, under the statute, to make an arrest under certain circumstances, makes the arrest lawful under all the circumstances. This point was well determined in Harris v. Ry. Ass'n, 218 S. W. 686, 688:

"As to the further contention that, 'where one gives information of a supposed offense, or even requests an officer to make an arrest, if the officer investigates the charge when he makes the arrest, and there is reasonable ground to suspect the person arrested as the perpetrator of the offense, said arrest is justified, even though the person arrested is guilty of no offense,' it is true that under the conditions as above stated the officer making the arrest would not be liable as to damages, but not so as to the individual. The officer would be absolved from any liability if he had reasonable grounds to suspect that a crime had been committed by the plaintiff, even though it may afterwards turn out that she was not guilty, but the only justification which the individual or unofficial citizen could invoke would be that the party arrested actually is guilty.

"The question as to whether or not the officer making the arrest in this case had reasonable grounds to suspect the commission of a crime by the plaintiff is not necessarily before us; for whether he did nor did not have such reasonable grounds would only go to the question of the officer's liability, and not to the defendants.

"After holding, as we have, that plaintiff was arrested at the direction of the defendant's agent, Hoesli, then defendant's only ground of justification is that she was guilty of stealing the suitcase. [Pandjiris v. Hartman, 196 Mo. 539, 94 S. W. 270; Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68; Leve v. Putting, 196 S. W. 1060.]"

Defendants depend largely upon the case of Hansen v. Bieber, 271 Mo. 326, for support in their contention that the arrest was lawful, and defendants not liable therefor. We are unable to see that defendants may derive any valuable support in that opinion. The facts upon which that opinion was based are very similar to those in the instant case. Judge WALKER in that opinion said:

"Whether the circumstances alleged show probable cause is a question of fact to be found by the jury. Whether if true such circumstances amount to probable cause is a question of law to be determined by the court."

That statement of the opinion was based upon the fact that the circumstances were undisputed, but where the facts are disputed, as in the case at bar, the learned judge said:

"This holding is not to be understood as precluding the showing of a former conviction as prima-facie evidence of probable cause subject to rebuttal by proof of the reversal of the judgment of conviction in an appellate court after a full and fair hearing of all the facts and any other relevant evidence, thus making the question of probable cause, as it should be where disputed, one of fact for the jury upon all the evidence in the case. Repeating, the elementals applicable here as elsewhere: The question of probable cause is a mixed one of law and fact. Whether the circumstances alleged show probable cause is a question of fact to be found by the jury. Whether if true such circumstances amount to probable cause is a question of law to be determined by the court. [Brant v. Higgins, 10 Mo. 728; Hill v. Palm, 38 Mo. 22; Stubbs v. Mulholland, 168 Mo. 76; Carp v. Ins. Co., 203 Mo. 351.]

"Holding as we do that judgment of conviction here does not constitute probable cause, it follows that the acquittal of the plaintiff in the court of criminal correction constituted under our rulings, persuasive evidence of want of probable cause. [Sharpe v. Johnson, 59 Mo. 577, 76 Mo. 670; Sappington v. Watson, 50 Mo. 83; Casperson v. Sproule, 39 Mo. 39; Brant v. Higgins, 10 Mo. 728; Christian v. Hanna, 58 Mo. App. 37.]"

"The evidence of the plaintiff's acquittal, supplemented by other facts and circumstances, tended therefore to establish the essential element of the want of probable cause necessary, among others, to the successful maintenance of a suit of this character."

This rule was maintained as far back as Sharpe v. Johnson et al., 59 Mo. 577, thus:

"Probable cause is a mixed question of law and fact. When the facts are undisputed, it is the duty of the court to declare their legal effect. When they are disputed, it is for the jury to determine the question under proper instructions from the court. [Hill v. Palm, 38 Mo. 13, and authorities cited.] The facts relied upon by plaintiff to show want of probable cause, and to which reference is made in his instructions, are, first, his discharge by the committing magistrate, and his acquittal in the criminal court."

"If the plaintiff were discharged by the court of criminal correction, exercising the powers only of a committing magistrate, not on account of any technical formality, but on an examination of the merits of the charge, under the authority of Brant v. Higgins, 10 Mo. 73, such discharge would necessarily be considered very persuasive evidence that the prosecution was without probable cause."

Further consideration of citations on this question would seem to be unprofitable.

The question of probable cause is accepted as meaning that there was or was not probable cause for believing plaintiff had violated some ordinance of the city of Kansas City, or some statute of the State. We fail to find, however, that there was a showing that plaintiff had violated any law of the city or State. The facts as to whose culpability caused the accident were in dispute, and, therefore, a question for the jury arose on the issue of probable cause. We hold there was no error in submitting the case to the jury.

Defendants complain that the court erred in refusing their requested instructions 7, 8 and 9, but an examination of these instructions shows them to be in effect in the nature of special demurrers. We have passed upon this question in what we have already said and need not discuss it further.

Complaint is made that the court erred in giving plaintiff's instruction A. The part of the instruction complained of is as follows:

"That thereafter, to-wit, on the 8th day of July, 1924, plaintiff appeared in the said north municipal court for the trial answer to make to said charge; that on said day the defendants, through their agents, servants, employees and officers, falsely and maliciously and without probable cause whatsoever, continued the prosecution of said charge against plaintiff by appearing in said north side municipal court and urging by testimony and argument that plaintiff be convicted of said charge."

We have already determined this point against defendants' contention in our discussion of the demurrer.

Error is charged against plaintiff's instruction B, which is as follows:

"The court instructs the jury that the defendants' connection with the arrest and prosecution of the plaintiff, if any, does not have to be proven by direct and positive evidence, but may be established by facts and circumstances in evidence from which such connection, if any, may be reasonably inferred."

That such an instruction is proper was determined by this court in the case of Wright v. Hoover, 241 S. W. 89, 90:

"The plaintiff insists that the court erred in sustaining the demurrer to the evidence and we think the point to be well taken. In cases of this kind it is not necessary to show that the defendants directed the arrest, but it is sufficient to show that they instigated it (McAleed v. Good, 216 Pa. 473, 65 Atl. 934, 10 L. R. A. (N. S.) 303; 116 Am. St. Rep. 782; Johnson v. Norfolk & Western Ry., 82 W. Va. 692, 97 S. E. 189, 192, 6 A. L. R. 1469), and it is not essential to prove this fact by direct evidence, but it may be inferred from circumstances. [Milton v. Dairy Co., 188 Mo. App. 278, 285, 175 S. W. 105; Grimes v. Greenblatt, 47 Colo. 495, 107 Pac. 1111, 19 A. Cases 608.]"

See, also, Milton v. Dairy Co., 188 Mo. App. 278, and Wright v. Gasoline Co., 250 S. W. 368, 374, wherein the Supreme Court said:

"In a case of this character plaintiff is not required to prove that the defendant or its officers ordered his arrest; it is sufficient to show that they instigated it. This need not be proved by direct evidence, but it may be inferred from the circumstances. [Wright v. Hoover (Mo. App.), 241 S. W. 89, and cases cited.]"

A charge of error is also lodged against plaintiff's instruction E. It is charged the instruction is broader than the evidence; practically directs the jury to find actual damages for plaintiff in a sum not exceeding $5000; and assumes defendants' caused plaintiff's arrest, and caused the charge to be laid against him. We have examined the instruction complained of and fail to find it assumes any facts not found in the evidence, but requires a finding on the controverted issues. We think the instruction proper.

It is argued that instruction 10 given by the court of its own motion was erroneous, in that it was broader than the evidence and told the jury if they found the issues for plaintiff and that he is entitled to both compensatory and punitive damages, their verdict would be in certain form. It is urged there was no evidence authorizing punitive damages, and, therefore, was broader than the evidence. There is no merit in this contention, in the face of the evidence of record. Malice is a question of fact for the jury, and is generally inferred from want of probable cause. [2 Bouvier's Law Dict., 2070; Brownstein v. Wile, 65 Hun. 623, 20 N. Y. Sup. 204.]

For reasons above stated, it follows the motion in arrest was properly overruled.

It is further charged the verdict is excessive and unjust. It is urged there was practically no evidence of any actual damages. We think this contention lacks merit. The jury allowed $500 for actual damages. It has been held that the question of compensatory damages is largely a question for the jury, and will not be interfered with on appeal unless it is clearly shown that the amount allowed is the result of passion and prejudice. [Vaughn v. Hines, 230 S. W. 382.]

In the case at bar the jury had the facts before them, and found that plaintiff was wrongfully arrested and placed in "durance vile." The disgrace and humiliation that would attend such circumstances, as disclosed by plaintiff's evidence, as well as the jeopardy in which plaintiff's liberty had been placed, are matters of a relative nature, and the law, in its great wisdom, has seen fit to leave the amount given by the jury as compensation therefor. [See, also, Todd v. Express Co., 271 S. W. 880, 885, and cases cited therein; Fuller v. Ry. Co., 270 S. W. 140; Kiener v. Railway, 269 S. W. 636.] We shall not disturb the finding of the jury in this respect, having as it does, the approval of the trial court.

Finally it is urged the judgment should be reversed because counsel for plaintiff in his argument referred to "Mr. Pollard's school of witnesses." It is contended there was no evidence of any such school. We are unable to agree with defendants on this point. There was evidence that defendants' witnesses were gathered together by Mr. Pollard who seems to have been in the employ of the defendant, and there, in his presence and in the presence of each other, they went over the testimony they were to give. They testified at the trial that Pollard informed them they would be called as witnesses to protect the street railway company, in showing it was not in any way responsible for plaintiff's arrest.

It is insisted the court should have reprimanded counsel for referring to this circumstance as "Pollard's school of witnesses." This the court refused to do. Under the evidence, we hold the ruling of the court was proper.

We find no reversible error of record, and the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.