262 S.W.2d 32 (1953)
HEINOLD
v.
MUNTZ T.V., Inc.
No. 43515.
Supreme Court of Missouri. Division No. 1.
November 9, 1953.
Burnett, Stern & Liberman, Rexford H. Caruthers, St. Louis, for appellant.
*33 Shepley, Kroeger, Fisse & Shepley, William K. Stanard II, St. Louis, for respondent.
HOLLINGSWORTH, Judge.
Plaintiff, Gottlieb John Heinold, sued to recover from defendant, Muntz T. V., Inc., damages in the sum of $50,000 for causing him to be falsely arrested and imprisoned. The petition alleged that on August 2, 1951, defendant unlawfully caused and procured plaintiff to be arrested for and charged with the theft of a television set from it, or, in the alternative, if defendant did not cause his arrest, then defendant thereafter knowingly ratified an unlawful imprisonment of him on said charge. Upon trial in the Circuit Court of the City of St. Louis, plaintiff abandoned the alternative charge of ratification of plaintiff's arrest and imprisonment, and the case was submitted solely on the issue of defendant's causing and procuring his arrest. The jury returned a verdict in favor of defendant. Plaintiff appealed from the judgment rendered in conformity with the verdict, assigning error in certain instructions given in behalf of defendant. Defendant contends that said instructions are not erroneous, but that, in any event, plaintiff did not make a submissible case and the judgment should be affirmed. Defendant's contention requires a review of the evidence most favorable to plaintiff.
Defendant, a Delaware corporation, operates stores at 3300 North Florissant and 5925 Easton Avenues in the City of St. Louis for the sale of television sets at retail. Plaintiff, sometimes referred to in the evidence as Lee Heinold, is a house painter and paper hanger, residing with his family at 4936 Lotus Avenue. During the last week in July, 1951, defendant received at its Florissant store a shipment of twenty-five M-2055 television sets. Three of these sets were transferred to the Easton store. Shortly thereafter, and during the same week, Beryl Kohn, one of defendant's salesmen at the Easton store, in taking inventory, could not account for one of the sets. Following an investigation, Kohn advised James B. Poettgen, defendant's general service manager at the Florissant store, that the set was missing. Poettgen was also unable to locate or to account for it. Kohn thereupon called defendant's manager, Mr. Kay, and asked him what procedure he should take. Kay directed Kohn to call the police department, which Kohn did. Two police officers came to the store. Kohn told them someone had stolen a television set from the Easton store and that no one was suspected. The officers then inquired if defendant "would prosecute", to which Kohn, after again calling Mr. Kay, replied that defendant would cooperate with the law and either defendant or the insurance company would prosecute.
On Thursday, July 26, 1951, plaintiff by chance met Frank Jarvis, a painting contractor, at a paint supply store in St. Louis. He had known Jarvis for some time. Jarvis asked him if he wanted to buy a Muntz TV set for $125. Plaintiff asked time to think it over. That evening Jarvis and a companion whom plaintiff did not know brought the set to plaintiff's home. It was in a cardboard box. Jarvis and his companion took it from the box and connected it up. It did not play so well. Later that evening Jarvis brought another man to plaintiff's home, who fixed the set. Plaintiff then and there bought it upon Jarvis' promise that if he had any trouble with it Jarvis would get it fixed.
The set worked until about nine o'clock that evening and again quit. Plaintiff saw Jarvis on Saturday, July 28th, and told him the set would not work. On Tuesday, July 31st, Grooms Television Company, at the direction of Jarvis, took the set from plaintiff's home, repaired it, and returned it on Thursday, August 2nd. Thereafter, Maurice Grooms, owner of the Grooms Television Company, told his cousin, Donald Grooms, an employee of defendant, that he had worked on a Muntz TV set at the home of plaintiff and that the set "had never been [properly] set up". Donald Grooms reported this conversation to Mr. Poettgen. Acting on that information, Poettgen checked defendant's records to ascertain if a television set had been sold by defendant *34 to plaintiff and found that none had been. On Friday, August 3rd, Poettgen called the police and told them of the information received from Grooms and that the set at plaintiff's home fit the description of the missing set, and that it seemed to him "it had no right being there". Upon receipt of this information, two police officers went to plaintiff's home the same afternoon. Both plaintiff and his wife were away at work, and the officers talked to one of their children. The child called her mother and told her of the visit by the police and that the police had asked if "we had a television and where we got it", and that the police would be back that evening. Mrs. Heinold called plaintiff and gave him the information imparted by the child. Later the same afternoon, plaintiff saw Jarvis at the paint store and told him of the police coming to his home. Jarvis said the set was not stolen. Plaintiff asked Jarvis for a receipt. Jarvis went to get a pencil, returned and gave plaintiff a folded paper, saying, "Here. I'll see you later; show it to the police." Plaintiff, without looking at the paper, placed it in his pocket, believing it to be a receipt. After dinner that evening he examined the paper. It was dated July 20th, and read: "Received of Lee Heinold $125.00 for Muntz T. V." It was signed "Joe Berhn." This made plaintiff nervous, because he had bought the set on July 26th and because the receipt was signed by someone he had never heard of. He then destroyed the cardboard carton in which the set had come, because he thought the police would see it.
That evening two police detectives came to plaintiff's home. He showed them the set. They asked him when and from whom he bought it. He told them he bought it on July 26th and showed them the receipt. The officers asked him about the date shown on the receipt. He told them that was the receipt given him. The police then left, saying they would get a man from Muntz to look at the set. The police went to the Easton store, where they asked John E. Martin, a salesman for defendant, if he would come with them to identify the missing set. They did not say where he was to go and did not mention plaintiff's name. Martin told Mr. Kohn to watch the store, and went with the detectives. Nothing was said as they went to the Heinold home. On arrival at plaintiff's home one of the officers introduced Martin as a "gentleman from Muntz" and said they would like to see if he could identify the set. Martin looked at the back of the set and discovered that the serial numbers had been removed.
There is then a divergence in the evidence. According to plaintiff's evidence: Martin said he could not there identify the set but could identify it if they would take it to the police station; that he would have more of a chance to identify it there. One of the detectives and Martin then walked into another room, where they had a whispered conversation. Following that conversation, one of the detectives said to plaintiff and his wife, "Well, if we take the set down we have to take Mr. Heinold along too, we will have to take them both down; you will have to get a lawyer and a writ to get the set back." Martin looked at the detective and nodded his head. The detective then said to plaintiff, "Let's go." As the police were leaving with plaintiff, Mrs. Heinold said to Martin, "Are you sure you can identify the set?"; to which Martin said, "Yes." Martin carried the set out and put it in the police car. According to defendant's evidence: After Martin stated he was unable to find any serial numbers on the set, mention was made of the cardboard container in which the set had come having a serial number on it, whereupon the police made a search for the container but could not find it. Martin did not leave the room and there was no whispered conversation. Neither of the detectives asked him if he wanted anyone arrested. The decision to arrest plaintiff was made entirely by the officers. Mr. Poettgen testified there would be no reason to remove the set from plaintiff's home to the police station to aid in its identification. We of course accept plaintiff's version of this episode as true.
Inasmuch as the charge of ratification of the arrest was abandoned, subsequent events need not be detailed. However, it should be stated that plaintiff admitted at the trial that when taken to the police station *35 he at first asserted that the name on the receipt (Joe Berhn) was the name of the man from whom he bought the set, but that he finally told the police he bought it from Jarvis; that the police showed him a photograph of Jarvis and told him Jarvis was an ex-convict; and that he then told them everything he knew about the matter and signed a statement.
On Monday night, August 6, 1951, the Circuit Attorney refused to issue a warrant against plaintiff, and plaintiff was released. The television set was returned to him and was in his home at the time of the trial.
If the evidence warrants an inference that defendant directed, countenanced, advised, encouraged or instigated the arrest of plaintiff by the police then a submissible case was made. Hoock v. S. S. Kresge Co., Mo.Sup., 230 S.W.2d 758. However, if defendant, acting through an agent or servant, merely imparted to the police what it knew of a supposed offense, even though the agent or servant expressed an opinion that there was ground for the arrest, but without making any charge against or requesting plaintiff's arrest, such action does not render defendant liable. Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239, 241-242. Defendant is liable for the wrongful arrest of plaintiff only if its servant or agent caused or procured the arrest and, in so doing, acted within the scope of his authority, express or implied. Milton v. Missouri Pac. Ry. Co., 193 Mo. 46, 59, 91 S.W. 949, 4 L.R.A.,N.S., 282; Wright v. Automobile Gasoline Co., Mo.Sup., 250 S.W. 368, 371-372; Humphreys v. St. Louis-San Francisco Ry. Co., Mo.App., 286 S.W. 738, 742; Hurst v. Montgomery Ward & Co., Mo.App., 107 S.W.2d 183, 188; Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S.W.2d 835, 839; Snider v. Wimberly, supra; 35 C.J.S., False Imprisonment, § 40, page 553; 22 Am.Jur., False Imprisonment, § 37, p. 378.
Five of defendant's employees are mentioned in the evidence as having some connection with the events above related. Briefly recapitulated, their activities were as follows: Kohn, a salesman at the Easton store, when taking an inventory learned that a television set was missing. He reported that fact to Poettgen, service manager at the Florissant store. Poettgen could not account for the set. Kohn sought the advice of defendant's manager, Kay. Kay told Kohn to call the police department. Kohn reported the missing set to the police, told them that no one was suspected and, at the direction of Kay, stated that defendant would prosecute if an arrest was made. Donald Grooms, defendant's employee, reported to Poettgen what Maurice Grooms, who took the set from plaintiff's home and repaired it, had told him. Poettgen relayed this information to the police and stated to the police that the set described by Grooms fit the description of the missing set, and that it seemed to him the set had no right to be in the Heinold home. Clearly, none of these employees directed, advised, countenanced, encouraged or instigated the arrest of plaintiff. Only the activities of defendant's salesman, Martin, remain to be considered.
Plaintiff insists that Martin's statement at plaintiff's home that he could not there identify the set but surely could identify it at the police station, followed by the whispered conversation between Martin and one of the detectives, and the announcement by the police officer that if they took the set to the station they would also take plaintiff, to which Martin nodded his head, shows that Martin instigated the arrest; and that Poettgen's testimony that it would be unnecessary to take the set to the station to identify it demonstrates that fact.
One could suspect that plaintiff's interpretation of this episode was true, but he could not reasonably infer it to be the fact. The first statement made by Martin means only that he was unable to identify the set with the means available at plaintiff's home. Apparently, Poettgen thought the set could be as well identified at the Heinold home as elsewhere, which, insofar as we can see, is of no significance.
Both Martin and the detectives denied having any private conversation. Consequently, the evidence does not reveal *36 what was said by either of them or what phase of the case they discussed; whether they discussed further means of identifying the set or the advisability of arresting plaintiff; whether the detective even advised Martin of a purpose on their part to arrest plaintiff; or whether the detective sought or Martin gave any opinion on that subject. One could interpret the nod of Martin's head to mean either that he approved of the decision announced by the detectives or that he still wanted the set taken to the station in a further effort to identify it, regardless of the decision of the detectives to arrest plaintiff; neither would amount to instigation of the arrest. Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239, 241-242. Other interpretations than those above suggested will readily occur. All would be based upon conjecture. "Facts necessary to sustain a recovery in a civil case may be proven by circumstantial evidence, but the facts and circumstances proven must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. Such evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts." Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33. See also Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511, 513; Schoen v. Plaza Exp. Co., Mo.Sup., 206 S.W.2d 536, 538; Ruby v. Clark, 357 Mo. 318, 208 S.W.2d 251, 254. We have considered the cases cited by plaintiff wherein a private conversation between defendant's agent and a police officer, followed by plaintiff's arrest, was construed as evidence of the instigation of plaintiff's arrest by defendant's agent, to wit: Peterson v. Fleming, 222 Mo.App. 296, 297 S.W. 163, 164-165, and Humphreys v. St. Louis-San Francisco Ry. Co., Mo.App., 286 S.W. 738, 743. In each of these cases there were other facts in evidence which warranted an inference that the arrest was instigated by an authorized agent of defendant during the conversation. That is not true in the instant case.
But, if we assume that Martin actually instigated the arrest of plaintiff, there is yet a total lack of any evidence that he was acting within the scope of his authority, express or implied. Martin was not shown to be a store manager or an executive officer of defendant. There is nothing from which it may be inferred that defendant ever directly or indirectly charged him with any duty in regard to recovery of the set or the arrest of the person who took it. Defendant did not send Martin to the police and he did not volunteer to go with them to plaintiff's home. The police sought him out, and for one purpose: to "identify" the set. Assuming that defendant is chargeable with knowledge of the mission on which he went, it does not follow that defendant thereby impliedly authorized him to instigate the arrest of plaintiff, even if he identified the set as defendant's propertywhich he did not. If the master's television set is stolen and the police advise the master they have located at the home of another a television set which they suspect to be the stolen set, and the master directs his servant to go with the police to ascertain if it be his set, may it reasonably be inferred that the master impliedly authorized the servant to instigate the arrest of the person in possession of the set, even if the servant identified it as his master's set? The answer must be in the negative.
We hold that plaintiff did not make a submissible case. See authorities, supra.
The judgment of the trial court, being for the right party, is affirmed.
All concur.