# JOHN MARTIN, Respondent, v. WOODLEA INVEST-MENT COMPANY, et al., Appellants.

### Kansas City Court of Appeals, December 13, 1920.

1. **FALSE IMPRISONMENT: Arrest: Without Valid Authority or Legal Right Constitutes False Imprisonment.** Where there was no valid authority, or legal right, to make an arrest, the same constituted a true case of false imprisonment, and where said arrest was caused by an agent, acting for all of the defendants, connected therewith, defendants are liable.

2. ———: **Instigation: Participation: Liability.** Where defendant instigated the arrest of plaintiff and participated therein he rendered himself liable for false imprisonment.

3. **APPEAL AND ERROR: Admission of Evidence: No Exception: Not Available on Appeal.** Where no exception is saved to the admission of evidence in the trial court, and the admission thereof is erroneous, it cannot avail defendant on appeal.

4. **EVIDENCE: Memoranda not Written Declaration of Agent Made in Performance of Duty, But of Past Transaction, Inadmissible.** An exhibit or written memorandum made the day following an arrest by police officer was inadmissible, because it was not the written declaration of an agent made while performing an act for his principal, but was a record of a past transaction made after the arrest was accomplished.

5. ———: **Memoranda Not an Entry in Record Required to be Offically Kept is Inadmissible.** Where a memorandum or exhibit is not an entrry in any book or register which it was the official duty of a police officer to keep, or which he was required to make, and does not concern something the officer making memoranda did, but is a statement of what some one else did is inadmissible.

6. **FALSE IMPRISONMENT: Malice Not Essential: Punitive Damages.** Malice is not an essential element of false imprisonment, except to authorize punitive damages.

7. ———: **Malice: Punitive Damages: Question for Jury.** In an action for false imprisonment, evidence *held* sufficient to make it a question for the jury whether there was malice and whether punitive damages should be assessed.

8. ———: **Wrongful Arrest: Legal Malice: Instruction on Punitive Damages Justified.** Where the arrest and imprisonment of plaintiff is unjustifiable, a thing wrong in itself, and such as would oppress, humiliate and injure him, and to do such without authority and in reckless disregard of plaintiff's rights, constitutes legal malice sufficient to justify an instruction on punitive damages.

9. **INSTRUCTION: Assumption of Material Fact, Not Conceded: Erroneous.** An instruction which assumes a material fact in controversy where the record is not in such a state to make it a conceded fact is erroneous.

10. ———: **Improper to Submit Disputed Issue in One Part Thereof and Assume Issue as True in Another.** An instruction is improper which submits in two paragraphs thereof a disputed issue and in another paragraph thereof assumes the same to be true.

Appeal from Jackson County Circuit Court.—*Hon. Allen C. Southern*, Judge.

REVERSED AND REMANDED.

· *H. S. Julian* for respondent.

*I. J. Ringolsky, M. L. Friedman, Ringolsky & Friedman* and *Wm. G. Boatright* for appellants.

TRIMBLE, J.—This is an action for false imprisonment. Originally, the suit was as against the Woodlea Investment Company, the Kresky Investment Company and Kresky individually, but a dismissal was entered as to the Kresky Investment Company, and, upon a trial, verdict and judgment was had against the other two defendants, in the sum of $500 actual and $1000 punitive damages. They have appealed.

The Woodlea Investment Company, of which the defendant Kresky was the president and the principal owner, conducted a garage which was managed and controlled by said Kresky. The force employed there consisted of a white man, who acted as foreman, and three negroes. Plaintiff was one of the latter and was employed as a washer of automobiles downstairs in the basement of the garage.

Kresky, suspecting that the privately owned automobiles kept in the garage were being used at night by his

employees for their own private gain or pleasure, reported that to the police at a District Station a few blocks away and asked for protection. Manifestly, he suspected all of them, for he reported that "his men" were doing this and, though asked by the officer if he had any one at the garage he could depend on to tell him, he did not act on such suggestions, and the officer thereupon told him the only thing the police could do to help him was for him, Kresky, to have somebody to watch them, the employees, "and when they take out a car, we will send over and arrest them and put the in the police court." Kresky, acting on this suggestion, then went with the officer (Captain Whalen, who was about to go off duty for the day), to Sergeant Young was had charge of the station for the night, and the situation was explained to him, Whalen telling Young that Kresky was "going to watch for fellows taking cars out at night and when he calls, send somebody over and arrest them and we will put them in police court." Young furnished Kresky with policeman Walker who was to go with him and watch the garage that night. The evidence is that at the time of obtaining this policeman, Kresky said "his men were taking his patrons' cars out of the garage and using them for their own personal use, and he *wanted an officer to go with him and arrest them if possible.* Policeman Walker thereupon went with Kresky and together they watched the garage till near midnight. But nothing happened, so Kresky finally went away and called up the garage over the telephone, pretending that he was a prospective passenger needing the services of an automobile to take him from 36th and Central Streets to the depot. The foreman answered the telephone and agreed upon a price of 75 cents for this service, and Kresky said he would be ready in thirty minutes. Kresky then went back to policeman Walker who was still on watch and told him what had been done and Walker thereupon went to the appointed place, and, when he foreman of the garage came therefrom in a privately owned car, Walker arrested him and took him to the garage whither Kresky had gone and where he was when the policeman and his

prisoner, the foreman, arrived. The policeman then took the foreman to the police station where he was booked for investigation and later the charge was changed to using personal property not his own.

After the foreman was locked up, Sergeant Young (who died before the trial of the case at bar), ordered Policeman Clark to go to the garage and arrest the negroes. He went to the garage, found the two negroes, plaintiff being one of them, in the basement washing cars. He arrested them. The police station was telephoned to for the police car to be sent to the garage, and as it was policeman Walker's duty to haul in prisoners, he took the car to the garage and there found the plaintiff and the other employees under arrest and in charge of Officer Clark. The two policemen brought them, the prisoners, to the station. The arrest of plaintiff was made about three o'clock in the morning, and when he was taken to the station he was locked up.

According to plaintiff's evidence, *Kresky was in the garage* when officer Clark called plaintiff up from the basement and placed him under arrest. Manifestly, plaintiff's arrest was with full knowledge, consent and acquiescence of Kresky. Certainly the jury could reasonably find that he, being present in the garage at the time the arrest was made and the telephone message sent to the station for the car, was agreeing and consenting to the arrest, for though the arresting policeman Clark came on the order of Sergeant Young, that was pursuant to the arrangement had between him and Kresky.

The next morning at the police station, Kresky was there, and the foreman was brought up from his cell and questioned by Captain Whalen who had come on duty for the day. He finally admitted his guilt in taking the car out, but implicated the other men as being similarly guilty. Thereupon the other men, including plaintiff were brought up and questioned. Plaintiff, in Kresky's presence, asserted his innocence saying he had not taken out any cars. Captain Whalen's evidence at this point is: "Then I turned to Kresky who was outside in the hall, and I asked him, and I said, 'We will put them all

in the police court and let them just thresh it out.''' And "Kresky said, 'All ·right—whatever you say.' I says that is the only way to do it. I said, 'Those boys said they didn't take them out, and this fellow says they all took them out.'' The force of this testimony against Kresky cannot be lessened by any claim that when Whalen turned to Kresky and asked him what to do, he referred solely to the foreman and not to the plaintiff or to the others. For manifestly the conversation was concerning *all* of the men and not the foreman merely. Besides there was no question as to·his guilt. He had been caught in the act and had confessed, and there was no need of taking the other man to the police court except to *ascertain* whether or not *they* were also guilty.

When it was decided to take the men to the police court, Whalen' realized that the police car at his disposal was too small to carry all of them and he told Kresky that if he had to call the patrol wagon from another District Station, it would take up a good deal of time. Thereupon Kresky, who had a big car, hauled the prisoners, including plaintiff, down to the police court in his car. At the police trial, Kresky was present and testified against plaintiff. The latter was fined ten dollars. He appealed to the criminal court where, finally after several continuances by the City, the case against him was dismissed and he thereupon brought this action.

In addition to the foregoing, as shown by the evidence in plaintiff's favor, Kresky, himself, though denying that he personally ordered anyone arrested, unless perhaps the one who actually took a car out that night, testified that·''I made several trips to Captain Whalen, and things got to going pretty fast, and I made a trip late in the evening the ̖night of the 24th, and told him I had decided to lay·for the bunch that night—that I was going to stay out all night, and if I could get an officer, I wanted to see if anybody was taking cars out. I asked him if I could get an officer in case I caught somebody taking cars out.

"Q. So you could get them arrested? A. Yes, sir.'' He testified that he watched the garage and laid the trap

by telephoning to the garage and getting the foreman to come to 36th and Central in a car that didn't belong to him, and that he telephoned to the station for an officer. His testimony also shows that he assisted in taking the men down to the police court, although he knew the foreman had admitted his guilt and that plaintiff was asserting his innocence; and, to facilitate matters in regard to the transportation of them, he got hold of a friend, Willis, who it seems was also interested in the garage, and drove him over to the garage where Willis got his car and "Then I (Kresky) drove my car back to the police station, and he drove his car, and *we* took *them* to the South Side Court."

There was no valid authority or legal right to make the arrest of the plaintiff herein, so that it constitutes a true case of false imprisonment provided the defendants are connected therewith, and the defendants' liability all comes down to the question of Kresky's connection therewith and whether such connections with plaintiff's imprisonment is sufficient to render them liable therefor.

We cannot agree with the contention that there is no evidence showing that Kresky had anything to do with or instigated the arrest of plaintiff but that the only arrest he caused or requested was that of the man who actually took the car out that night, and that the arrest of plaintiff and the other men was merely the act of the police sergeant. We think there was ample evidence from which the jury could find that Kresky instigated and participated in the arrest of plaintiff as well as of the foreman who took the car; and it cannot be said that the arrest of plaintiff, as distinguished from the arrest of the guilty foreman, was merely the act of the police authorities moving on their own initiative and going beyond the wishes and directions of the defendant, Kresky. If he instigated the arrest of plaintiff and participated therein, he rendered himself liable for false imprisonment. [11 R. C. L., p. 808; Boeger v. Langenberg, 97 Mo. 390, 395-6.] He not only made the police his arresting agents but he put in a large part of the

night co-operating with the police, was present and knew that plaintiff and the other men were being arrested, and the next morning counseled and advised, or agreed, that plaintiff should be taken to the palice court, assisted in taking him there; and, on he trial, testified against him. The police were not acting upon their own initiation by virtue solely of their position as guardians of public order. They were moving in the matter because Kresky had asked them. He was cognizant of what they were doing and participated therein. Complaint is made of the admission in evidence of plaintiff's exhibit No. 2, a written memorandum made by Sergeant Young, (who died before the trial), and left on his desk for the information of the officer succeeding him in charge of the station the day following the night of the arrest of plaintiff. Said memorandum is as follows:

"N. T. Clark arrested Ed. Ramsay, colored, and John Martin, colored, who are washers at the Woodlea garage *on complaint of Mr. Kresky.*" The part italicized by us contains the fact plaintiff sought to prove by said exhibit. The record discloses no exception saved by defendants to the admission of this evidence, and hence, even if its admission be erroneous, it could not avail defendants now. But since the case must be retried for a reason hereinafter stated, we should rule on the point as a guide in the next trial.

We do not think the exhibit was admissible. It is not the written declaration of an agent made while performing an act for his principal. True, Young was Kresky's agent to make the arrests, but the declaration was not made while such act was being done. The memorandum shows on its face that it is the record of a *past* transaction made *after* the arrest was accomplished. Again, it is not shown to be an *entry* in any book or register which it was Young's official duty to keep or which he was required to make. It was, so far as the record shows, a mere note or memorandum from Young to the succeeding officer in charge and stands on no better footing than if Young had personally *said* to Whalen, "Clark arrested John Martin on complaint of Mr. Kres-

ky." Besides, the fact here sought to be proved is not something the officer making the memorandum did, but his statement therein of what someone else did. Usually, where entries of third persons, since deceased, are admitted as evidence, the fact to be proved is some act of the person making the entry or that something was done because if it had not been done, the entry would not have been made, not his statement therein that someone mentioned therein did something else. We think the memorandum was inadmissible.

It is urged that there was no evidence of malice. Malice is not an essential element in false imprisonment except to authorize punitive damages, and it is to exclude punitive damages that the objection is made. The contention, however, is untenable as the evidence is sufficient to make it a question for the jury whether there was malice and whether punitive damages should be assessed. The arrest and imprisonment of plaintiff, if unjustifiable, was a thing wrong in itself, such as would oppress, humiliate and injure him, and to do this without authority and in reckless disregard of plaintiff's rights would constitute legal malice sufficient to justify an instruction on punitive damages. [Dazell v. Dean Hotel Co., 193 Mo. App. 379, 400, 401.]

Complaint is made that plaintiff's instruction No. 1, covering the case and authorizing a verdict, is erroneous in that it assumes a material fact in controversy, namely whether Kresky did order the arrest of plaintiff. While the evidence, as hereinbefore stated, is ample to authorize a jury to say that Kresky caused the arrest and imprisonment of plaintiff, and while Kresky's evidence tends to help plaintiff's evidence in that regard, yet the record is not in such a state as to make that a *conceded* fact in the case. Kresky's contention is that he authorized the arrest only of those caught in the act of taking out cars and that the additional arrest of the other men was an act of the police not authorized or directed by him, and the question of whether this is true or not was an issue in the case and was treated at the trial as such. The assumption that Kresky did order

the arrest is contained in this part of the instruction—
"The court further instructs the jury that if they believe from the evidence that defendant, H. A. Kresky, *in ordering the arrest of the plaintiff*, was acting for and on behalf of the defendant, Woodlea Investment Company, you will return a verdict against said defendant, or against him, if you believe he was acting on his own behalf." This is an instruction complete in itself although it appears as the third paragraph of instruction No. 1, which in fact is three instructions thus joined together. The first paragraph covered the case and directed a verdict if the issues therein submitted were found in plaintiff's favor. The second paragraph was also an instruction complete in itself and told the jury they could find against one or more of the defendants and in favor of the others. Now, the fact that in the first paragraph the question whether Kresky did request the arrest of plaintiff was submitted to the jury, does not, in our view, remove or relieve the fact that the instruction contained in the third paragraph assumed that Kresky did order the arrest. The correctness of an instruction should be somewhat determined by the effect it would reasonably have upon men not trained in the law and upon the precedent that would be established, and what that would lead to, if it were approved. A juror reading the instruction could well say to himself and his fellow jurors, "The court in the first part of this instruction submits to us whether Kresky requested the arrest, but it is plain, from the third paragraph, that the court thinks he did order plaintiff's arrest." Again, if such an instruction be approved, it would be an easy matter, in cases hereafter, to submit a vital issue in one instruction and then have another instruction given which would be so drawn as to convey an intimation as to what the court thought on that issue.

There are complaints made as to other matters but they need not be noticed now, since doubtless they will be avoided upon trial anew.

The judgment is reversed and the cause remanded for a new trial. The other judges concur.