FIRST NATIONAL BANK OF ADRIAN, MO., Appellant, v. FRED ALLISON, Defendant, BEN ALLISON, Interpleader, Respondent.

In the Kansas City Court of Appeals, May 21, 1923.

1. **DEMURRER:** In Passing upon a Peremptory Instruction in Nature of a Demurrer, Where Cause Was Tried upon an Interplea, the Interpleader's Testimony Must be Accepted as True. In passing upon a peremptory instruction in the nature of a demurrer where the cause was tried on an interplea, the interpleader stands in the position of plaintiff, and the interpleader's testimony must be accepted as true.

2. **FRAUD**: Fraudulent Conveyances: Question of Whether Cattle Were Sold With Intent to Defraud Creditors Held For the Jury. In an action for money loaned and in aid of which the proceeds of the sale of certain cattle claimed to have been sold to interpleader by defendant for the purpose of defrauding his creditors were attached, where testimony of interpleader and defendant showed that defendant owed interpleader the amount of a note given him, and that a mortgage on the cattle as security therefor was given in good faith, the note and mortgage being introduced in evidence, *held* substantial evidence warranting submission of question of fraud to the jury.

3. **INSTRUCTIONS**: An Instruction Which Assumes a Controverted Fact is Erroneous. An instruction that a defendant, in an attachment proceeding,* who delivered attached property to his brother to whom he had previously executed a chattel mortgage thereon as security for the payment of a note, had a legal right to prefer one creditor to another, *held* erroneous as assuming that the brother, the mortgagee, was a creditor of defendant, whereas that question was one of the disputed points in the case, and the fact that the instruction did not assume to cover entire case and direct a verdict, does not cure the error.

Appeal from the Circuit Court of Bates County.—*Hon. C. A. Calvird*, Judge.

REVERSED AND REMANDED.

*Silvers & Silvers* for appellant.

*DeArmond & Maxey* for respondent.

ARNOLD, J.—This is an action for money loaned by plaintiff to defendant.

The record shows that the Allisons, father and two sons, moved from Nebraska to Bates County, Missouri, a few years prior to the occurrences which form the basis of this suit. The father, I. F. Allison, and the son Ben Allison, purchased farm land there, and the defendant, Fred Allison, became a tenant of the Scullys, large landowners in Bates County, and engaged in farming and stock raising. Defendant owned no lands in Bates County with the exception of a half interest in forty acres which he and his brother Ben purchased and owned.

In the conduct of his farm and stock business, defendant borrowed from the plaintiff bank, at various times, sums of money amounting in the aggregate to $12,000 or $13,000, and in time he became possessed of considerable personal property. The Allisons, father and sons, became depositors in the plaintiff bank and transacted their business through said bank.

Defendant Fred Allison, on one occasion, purchased some cattle at the stock yards in Kansas City. The testimony shows that he did not have the money to pay for them and that his brother Ben advanced the money therefor in the amount of $1400, for which he drew his check on plaintiff bank. The cattle were brought to the farm then under lease to defendant and were there being fed. The testimony further tends to show that besides the amount advanced by Ben Allison for the cattle above referred to, defendant owed Ben additional sums, making a total of $2300 for which he gave Ben his note and mortgage upon eighty-six head of cattle, including those purchased at the Kansas City stock yards, as above indicated. Defendant also turned over to his father certain articles of personal property in payment of debts owing him. Defendant soon became involved in lawsuits and plaintiff instituted this action.

An attachment was issued to the sheriff of Bates county with instructions to levy on the cattle above mentioned and others then in the custody of defendant. The attachment was brought, charging that defendant had attempted to convey his property to his brother Ben and to their father, I. F. Allison, with intent to defraud his creditors. The writ of attachment was placed in the hands of a deputy sheriff, who went to the farm then occupied by defendant and learned that he was absent in Nebraska. He found a young man in charge of the place who stated he was in the employ of I. F. Allison. The deputy sheriff then told the young man that he was levying upon the cattle and some feed and that he would leave the property in his hands to be looked after. Pursuant to an order of the court, thereafter, the cattle were directed to be sold and notices to that effect were posted. Said

notices fixed the date of the sale on a Saturday, eleven days thereafter. On Thursday, preceding the date for the proposed sale, Ben Allison, I. F. Allison and the defendant shipped thirty-six head of the cattle to the Kansas City market in the name of Ben Allison, the returns thereof amounting to $1437.31, being remitted to Ben Allison and deposited in his name with the Adrian Banking Company.

An affidavit in attachment was filed and a writ of attachment issued and delivered to the sheriff who attached the said funds, and later the Adrian Banking Company was summoned as garnishee. Thereupon Ben Allison filed his interplea herein setting up that the sum of $1348.16 of the funds attached was his, and never was the property of Fred Allison, the defendant, and was not subject to attachment for the payment of his debts.

The answer of plaintiff to this interplea was, first, a general denial and as further answer, it is charged that the fund claimed by the interpleader was the proceeds of the sale of certain cattle that had theretofore belonged to defendant, Fred Allison. The reply of the interpleader to said answer denies the matters and things set out therein, and alleges that the interpleader had the right to possession of the said cattle, and also had the right to sell the same and apply the proceeds to the indebtedness of defendant to said interpleader.

The cause was tried to a jury upon the issues raised by the interplea and the pleadings incident thereto, and a verdict was returned in favor of the interpleader. Judgment was accordingly entered. A motion for new trial was overruled and plaintiff appeals.

The first charge of error is that the court should have given a peremptory instruction to find for plaintiff, offered at the close of the interpleader's evidence. It is urged in support of this charge that "all the *indicia* of fraud were present and manifest in the case possible in fraudulent transactions.".

From this statement as a basis, plaintiff proceeds to point out, as evidence of fraud, that the brothers Ben

and Fred Allison, on the witness stand, had made statements of the items which went to make up the $2300 for which Fred gave Ben his note and the mortgage on the eighty-six head of cattle, and that the said items did not total the exact amount of said note, but were for a lessor sum. It is also insisted that the mortgage given to the interpleader was dated back to correspond to the date of the note, and that this was a suspicious circumstance strongly pointing to fraud. It is argued that there was no evidence of the ownership of the cattle in Ben Allison.

There are other things pointed out by counsel in their argument before us upon which the first assignment of error is predicated, among which is the charge that there is no evidence of a contract between the two brothers and that the mortgage was void; that there was no "getting together" and that their "minds did not meet" on a contract for the disposal of the cattle shipped to the stock yards at Kansas City.

These matters can only be considered as suspicious circumstances, at best, and then only from plaintiff's viewpoint. It is well settled that in passing upon a peremptory instruction in the nature of a demurrer, the testimony of the plaintiff must be accepted as true. In this case, the cause having been tried on the interplea, the interpleader stands in the position of plaintiff. The interpleader and defendant both testified that Fred Allison owed Ben the amount of money represented in the note, and that the mortgage was given as security therefor in good faith. Both the note and mortgage were introduced in evidence. This was substantial evidence, and under the above rule, there was no error in submitting the question to the triers of fact.

As we read the record, the issues presented in the case were: (1) Was Fred Allison indebted to Ben, the interpleader, and (2) if so did he surrender the cattle to Ben?

It cannot be denied, as stated above, that there was substantial evidence in support of the interpleader's allegation that his brother Fred was indebted to him. It

is insisted by the interpleader that under the provisions of the mortgage that "at any time, from any cause that the or their assigns may feel insecure the said Ben Alli- son, or their legal representatives may take the said property or any part thereof into their possession and the said mortgagor hereby agrees to deliver the same to Ben Allison in Adrian, Missouri, when they demand pos- session thereof," the interpleader had the right to take said cattle. The testimony shows that the cattle were actually shipped in the name of Ben Allison and sold for his account. From this evidence it was within the prov- ince of the jury to conclude that the cattle were delivered to Ben Allison.

It is insisted by plaintiff that the giving of instruc- tion No. 1 for the interpleader was error. Said instruc- tion reads:

"The court instructs the jury that Fred Allison had a legal right to prefer one creditor to another and that the fact of such preferment is not evidence of fraud though the creditor preferred was in this case his broth- er, but you may consider such facts in determining the good faith of the transaction between them."

It is charged this instruction assumes that Ben Alli- son was a creditor of his brother Fred, whereas that was one of the disputed points in the case. We think the objection is well taken. The interpleader urges that be- cause the instruction does not assume to cover the en- tire case and to direct a verdict, it is not erroneous, but this position is untenable. An examination of the cases cited in support of this view shows they have no appli- cations here. In Hughes v. Railway Co., 127 Mo. 447, l. c. 452, it is said:

"This court has repeatedly held, since the decision in the case of Owens v. Railroad, decided in the 95th Mo. 169, overruling the contrary doctrine announced in the case of Sullivan v. Railroad, decided in the 88th Mo. 182, as well as in numerous cases earlier than the Sullivan Case, that, where a series of instructions taken together contains a compete exposition of the law and covers every phase of the case, the verdicts obtained thereon

will be sustained, even though the instructions when taken separately may be incomplete, and open to objection and criticism; that, if, taken together, the full law of the case can be ascertained, they are complete, and there is no necessity for 'qualifying each instruction, by an express reference to the others.' ''

In Neal v. Crowson, 231 S. W. 1033, it was held that an instruction not purporting to cover the entire case must be construed in connection with other instructions. To the same effect is Rouden v. Heisler's Est., 219 S. W. 691, that an instruction which assumed a controverted fact is not cured by another instruction requiring the jury to find on such fact. [See, also, Martin v. Woodlea Inv. Co., 226 S. W. 650.]

We have carefully examined all the instructions in the case and hold that the error in instruction No. 1 was not cured by other instructions given. Other points are urged, but as the cause will be reversed for the error noted, we need not prolong this discussion. The judgment is reversed and the cause remanded for a new trial. All concur.