Christian H. WEHRMAN, Plaintiff-
Respondent,

v.

LIBERTY PETROLEUM COMPANY, Inc.,
a Corporation, and Wilford Brown,
Defendants-Appellants.

No. 31272.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1964.

Rehearing Denied Oct. 13, 1964.

Alvin A. Wolff, Hullverson, Richardson & Hullverson, Orville Richardson, Corinne Richardson, St. Louis, for defendants-appellants.

Coleman, Ross & Cekovsky, Hal B. Coleman, Clayton, William L. Mason, Jr., St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff, Christian H. Wehrman, sued to recover actual damages of $4,000 and punitive damages of $15,000 from defendants Liberty Petroleum Company, Inc. and Wilford Brown for causing him to be falsely arrested. The jury returned a verdict against both defendants for actual damages of $100 and punitive damages of $7,500, judgment was entered in conformity therewith, and after unavailing after-trial motions the defendants appealed.

The numerous points and sub-points raised by defendants comprise most of the grounds of appellate review. They contend that error was committed in overruling their motions for a directed verdict at the close of all the evidence; in the giving of certain instructions on behalf of the plaintiff; in the refusal of instructions offered by the defendants; and in the admission of certain evidence. Lastly, they complain that the verdict for $7,500 for punitive damages is excessive.

■ Defendants' initial contention requires a review of the evidence most favorable to plaintiff. Defendant Liberty Petroleum Company, Inc., whose home office was in Mount Vernon, Illinois, owned and operated a filling station, designated as No. 15 in its chain, at Hebert and Florissant Avenues in the City of St. Louis, Missouri. Defendant Wilford Brown was the manager of the station. Plaintiff, then a salesman for a hearing aid company, was a customer. On September 30, 1957, about 9:00 A.M., plaintiff stopped at the station on his way downtown to his office and had his tank filled with gasoline, for which he paid $4.60 in cash. Around 11:00 A.M. he left his office, obtained his car from the lot where it had been parked, and started to drive home for lunch. Plaintiff experienced trouble with the motor, which repeatedly died, and by the time he reached Delmar Avenue his battery was dead. His automobile was pushed into a nearby filling station where the primary trouble was diagnosed by the attendant as water in the gasoline. The fuel pump was cleaned, part of the gasoline was drained from the bottom of the tank, a can of Heet was put into the tank to cut any water remaining in the gas-

oline, and the battery was charged, for which services plaintiff paid $4.50. Plaintiff then drove to Liberty Petroleum's station where he complained to Brown that the gasoline he had purchased there had contained water. Brown said he knew it had, because he had found water in his own gasoline taken out of the same tank, and because another customer had already been in to complain. Plaintiff pointed out that he had had $9.10 of expense ($4.60 for the gasoline and $4.50 for the service to his car), and Brown stated that he would take plaintiff's name, address and phone number and have the company mail him a check.

On two occasions that afternoon plaintiff experienced further trouble in starting his car, and spent an additional $4.05 for services and cans of Heet. Sometime between October 2 and October 11, plaintiff went back to Liberty Petroleum's filling station and informed Brown of his further difficulties and his additional expenses. Brown told plaintiff that he had been authorized to pay the $9.10 in cash, but in view of the further expense that plaintiff should write to James Dohono, Brown's superior at Liberty Petroleum's office, so that one check could be made out for the entire amount. Brown thereupon wrote out Dohono's name and the company's address, in Mount Vernon, Illinois, on a slip of paper and gave it to plaintiff. Plaintiff wrote Dohono, as Brown had suggested, and advised Dohono that he would call at the station on October 16.

Plaintiff received neither a check nor any reply, and on October 16, 1957, about 9:00 A.M., he drove in to the station to talk to Brown. The latter was waiting on another customer but called to him, " * * * 'I will be right with you, Mr. Wehrman.' " While waiting, plaintiff was approached by another attendant and asked if he needed gas. Plaintiff replied that he didn't have time, but when the attendant said that Brown would be busy for some time, plaintiff stated he might as well get his car filled up. Plaintiff backed his car up to the pump and the attendant put in

gasoline and oil amounting to $2.65. Thereafter Brown approached plaintiff, asked plaintiff if he had heard from the company, and when plaintiff answered "No," Brown said that he was not going to hear from it because the company was not going to pay plaintiff a cent. Plaintiff rejoined that he didn't understand, and Brown then stated that plaintiff would never prove that they were the ones who sold him the watered gasoline. Plaintiff at first thought Brown was joking, but when he realized that Brown was serious, inquired whether Brown wanted him to get a lawyer. Brown answered that plaintiff should get a half dozen lawyers, that plaintiff would not spend three or four hundred dollars to collect thirteen or fourteen dollars. In an effort to change Brown's mind, plaintiff suggested to Brown that a customer waiting at another pump be told of the controversy and his reaction obtained. Brown told plaintiff to go ahead, that it wouldn't do him any good. Plaintiff and Brown approached the customer, and plaintiff explained about his bills, but the customer said that he didn't want to get mixed up in the matter.

Brown thereupon told plaintiff that he would never get paid, and demanded payment of $2.65 for the gas that had been put in plaintiff's car. Plaintiff replied that he hadn't come in to buy, that the sale had been solicited, that if Brown wanted the gas he could drain it out of his tank, or that Brown could deduct the amount from what was owed plaintiff. Brown refused to drain the tank, stated that he wasn't running a charge account, and that if plaintiff didn't pay he would call the police. Plaintiff said that Brown didn't have to call the police, that he would call them. Brown warned him not to put one foot in the office, and plaintiff again told Brown to call the police, that he would wait. Brown's answer was, " * * * 'I'm telling you for the last time it's pay or get off.' * * *" Plaintiff said, " * * * 'Well, I'll get off.' * *" and as he was driving away plaintiff told Brown that his car would be parked at

Eighth and Market Streets. According to plaintiff, Brown comported himself throughout in an aggressive and nasty manner.

■ Brown telephoned the police as soon as plaintiff drove away. Officer Hamlin and another policeman, not identified, came to the filling station in answer to Brown's telephone call. Hamlin, whom Brown knew as a customer of the station, was the one who talked to Brown about the matter. By the time the trial was held Hamlin had died. The only evidence as to what Brown told Hamlin was extracts from Brown's deposition, which plaintiff read to the jury over defendants' objections. Since no error is assigned for review with reference to the admission of such evidence we accordingly consider it as if it came in without objection. Myers v. Karchmer, Mo., 313 S.W.2d 697, 708. According to Brown, all that he told Officer Hamlin was that a man came in to the station, made a purchase, refused to pay for it, and drove out without paying. Brown, whose not infrequent answers on both direct and cross-examination were, "I don't remember that," testified on direct examination that he gave Hamlin information about the kind of car it was and its license number. On cross-examination he stated that he didn't give Hamlin plaintiff's name and address because plaintiff had never given them to him, but when pressed about plaintiff's prior complaints of watered gasoline, recalled that plaintiff had given such information to him but that he had sent it to the company.

Hamlin's report (not introduced in evidence) reached Detective Thurman, who traced the automobile license number to plaintiff. Plaintiff was arrested at his home by Thurman and Detective Aikens on October 19, 1957, about 8:30 A.M. Thurman advised plaintiff that he was arrested for larceny under fifty dollars. Plaintiff was taken in a police car to the Fifth District police station at 1901 Penrose Avenue, where he was booked under the same charge. Thurman then contacted Brown,

and after plaintiff had been at the station about 10 or 15 minutes Brown arrived. According to plaintiff, the detectives asked Brown "* * * if I was the man" and Brown answered, "Yes." Plaintiff testified that the detectives questioned Brown, and that Brown finally decided he would pay plaintiff if plaintiff would give him a receipt. Plaintiff agreed to give Brown a receipt provided that he obtained a copy. Brown paid plaintiff $9.00, prepared a receipt and a copy thereof, and plaintiff signed it. The copy, which was read to the jury, was as follows:

"October nineteen, 1957, I paid out to Mr. Wehrman nine dollars. The amount he paid for the purchase price of the Ethyl, gas purchase. Also repair bills for removal of water from tank. Total pay nine dollars. Liberty Petroleum Company. Wilferd Brown. Received payment 10–19–57. C. H. Wehrman."

Plaintiff insisted that he did not pay Brown $2.65 for the gasoline and oil he had obtained on October 16, and denied Brown's testimony that each had paid the other. Following the payment to him by Brown, plaintiff was released. Detective Thurman testified that as a matter of routine a warrant was thereafter applied for and refused.

■ As plaintiff points out, in determining whether plaintiff made a submissible case we need not concern ourselves with the question of whether the arrest in question was lawful, nor with the issue of agency, for defendants do not raise either of those propositions. Defendants' sole contention is that, as a matter of law, Brown did not cause the arrest of plaintiff. The long-established rule in this state is that in order to make a submissible case for false arrest it must appear that the defendant caused or procured the arrest of the plaintiff. Heinold v. Muntz T. V. Inc., Mo., 262 S.W. 2d 32 (affirming Hoock v. S. S. Kresge Co., Mo.App., 222 S.W.2d 568); Wright v. Automobile Gasoline Co., Mo., 250 S.W. 368; State ex rel. Fireman's Fund Ins. Co. v.

Trimble, 294 Mo. 615, 242 S.W. 934 (reversing Mo.App., 235 S.W. 174). Plaintiff is not required to prove that the defendant ordered or directed his arrest. Wright v. Automobile Gasoline Co., supra; Thompson v. Fehlig Bros. Box & Lumber Co., Mo.App., 155 S.W.2d 279; Wright v. Hoover, 211 Mo.App. 185, 241 S.W. 89. A submissible case is made if from the evidence it appears that the defendant countenanced, advised, encouraged, approved, or instigated the arrest. Heinold v. Muntz T. V. Inc., supra; Hoock v. S. S. Kresge Co., Mo., 230 S.W.2d 758; Davis v. Weil Clothing Co., Mo.App., 367 S.W.2d 19. The word "instigate" was defined in Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239, 242, as follows:

> "We have said that 'instigate' means 'to stimulate or goad to an action, especially a bad action'; and that 'one of its synonyms is "abet," which "means, in law, to aid, promote, or encourage the commission of an offense."' State v. Fraker, 148 Mo. 143, loc. cit. 165, 49 S.W. 1017, 1022; this definition has been followed in a malicious prosecution case, Hughes v. Van Bruggen, 44 N.M. 534, 105 P.2d 494. * * *"

And the defendants' instigation of the arrest may be shown by either direct or circumstantial evidence. Thompson v. Fehlig Bros. Box & Lumber Co., Mo.App., 155 S. W.2d 279; Knupp v. Esslinger, Mo.App., 363 S.W.2d 210.

Defendants argue that all Brown did was to give the police information of the occurrence, and point to a line of cases, beginning with the decision of this court in 1877 in Lark v. Bande, 4 Mo.App. 186, which hold that the mere giving of wrong information to the police, even though it results in an arrest, cannot be the basis of an action for false arrest and imprisonment. Hoock v. S. S. Kresge Co., supra; Snider v. Wimberly, supra; State ex rel Fireman's Fund Insurance Co. v. Trimble, supra; Vimont v. S. S. Kresge Co., Mo.

App., 291 S.W. 159. But a careful analysis of those cases discloses that the word "wrong" was used in the sense of erroneous, not that of false or misleading, and that in each of the cases cited the informant believed, at the time he reported the matter to the police, that the information given was correct. For example, in the initial case of Lark v. Bande, supra, plaintiff requested defendant to give him change for a ten-dollar bill. Defendant believed the bill to be counterfeit and so reported to the police, who arrested plaintiff. It was subsequently determined that the bill was genuine, and plaintiff was released. The court held that since plaintiff had merely reported the facts, or what he honestly supposed were the facts, to the police he was not liable for the false arrest even though the information given proved to be incorrect. We are of the opinion, however, that a different rule should prevail where the informant knowingly and deliberately gives the police an incomplete and biased version of the occurrence which induces them to believe that another is a thief, and results in the latter's unwarranted arrest. It seems to us that from such evidence the jury could reasonably find that the informant instigated the arrest by stimulating or goading the police to take such action. See Wright v. Automobile Gasoline Co., Mo., 250 S.W. 368; Knupp v. Esslinger, Mo.App., 363 S.W.2d 210.

In the instant case, had Brown fully reported to the police *all* of the facts known to him we would have no hesitancy in holding that any arrest which followed could not be said to have been instigated by him. But Brown's own testimony, as well as that of plaintiff, shows that the information which Brown gave to the police was incomplete, inaccurate, and highly misleading. According to Brown, all that he told Officer Hamlin was that a man came in to the station, made a purchase, refused to pay for it, and drove out without paying. He did not tell the officer that he knew the man, or his name, although

according to plaintiff Brown had called him by name when plaintiff drove in that morning. Nor, according to Brown's own testimony, did he tell the policeman any of the other facts concerning the dispute. He did not tell of the water in the gasoline previously purchased by plaintiff; of the admitted indebtedness of $9.10 owed plaintiff; of the argument regarding whether the $2.65 purchase should be charged against the amount owed plaintiff; of plaintiff's offer to allow Brown to remove the gasoline from plaintiff's tank, and his (Brown's) refusal to do so; of plaintiff's offer to call the police, and his refusal to allow plaintiff to do so; of his order to plaintiff to leave the station; nor of plaintiff's advice, as he left, regarding where his car would be parked that day. The jury could find that by knowingly giving the police such incomplete, biased and misleading information Brown instigated plaintiff's arrest, and the court, therefore, did not err in overruling defendants' motions for a directed verdict. Wright v. Automobile Gasoline Co., supra; Knupp v. Esslinger, supra; Steiner v. Degan, Mo.App., 101 S.W.2d 519; Wright v. Hoover, 211 Mo.App. 185, 241 S.W. 89; Martin v. Woodlea Inv. Co., 206 Mo.App. 33, 226 S.W. 650.

▐ Under two points and various subdivisions in their joint brief defendants raise several charges of error regarding plaintiff's instruction No. 1. That instruction read as follows:

"'The Court instructs the jury that if you find and believe from the evidence that the defendants did unlawfully cause plaintiff to be arrested on the 19th of October, 1957, by police officers of the City of St. Louis, without warrant of law, if you so find, and to be carried by said police officers through the streets of St. Louis in a police conveyance to the police station and to be there held, if you so find, then your verdict shall be in favor of the plaintiff and against the defendants'"

Defendant Liberty Petroleum frankly concedes that there was evidence from which the jury could find that it was within Brown's authority to call the police, but it complains that the instruction did not require the jury to find that Brown was acting within the scope of his employment in causing plaintiff's arrest, if the jury found that he did so. If there was any uncertainty arising either from a conflict in the evidence or because the undisputed facts might lead reasonable men to draw different conclusions as to whether Brown was acting within the scope of his employment, then, of course, the question became one of fact to be settled by the jury; otherwise it was one of law for the court. De Mariano v. St. Louis Public Service Co., Mo., 340 S.W.2d 735; Salmons v. Dun & Bradstreet, 349 Mo. 498, 162 S.W.2d 245, 141 A.L.R. 674. Brown was the manager of the corporate defendant's station, which implied some general powers. Heinold v. Muntz T. V. Inc., Mo., 262 S.W.2d 32, 36. The undisputed evidence was that his powers and duties included those of selling the company's products and collecting from the purchaser the amount due on the sale. The testimony of both sides was that the argument which developed arose over the company's gasoline and oil that had been put in plaintiff's car and plaintiff's refusal to pay cash for the same. Brown's incomplete and misleading report to the police, and the arrest of plaintiff which followed, was on account of the theft, or supposed theft, of the Company's products. There was not a word of testimony offered by the corporate defendant in any way questioning Brown's authority with respect to the arrest. In fact, Brown's own testimony was favorable to the plaintiff, for he testified that after he had contacted the police and *before* plaintiff was arrested he had discussed the matter with Dohono, his supervisor, who was in the Company's home office. There was no evidence that Dohono or the company disapproved or disavowed Brown's action. And, according to Brown, after he had paid plaintiff the $9.00 at the

police station he sent the receipt obtained from plaintiff to the company, which reimbursed or gave him credit for the expenditure. Furthermore, the defendant Liberty Petroleum did not offer any instruction submitting to the jury the issue of whether or not Brown acted within the scope of his employment. The only instructions offered were joint instructions as to whether Brown caused the arrest of plaintiff, justification, and other issues. Under this state of the record defendant Brown's authority can hardly be said to have been a controverted fact below. Oliver v. Kessler, Mo.App., 95 S.W.2d 1226.

■ The second and third complaints regarding plaintiff's Instruction No. 1 are that it was erroneous because it authorized a verdict for both actual and punitive damages without submitting malice, an essential element of punitive damages; and that it erroneously compelled a verdict as to punitive damages, as well as compensatory damages, and failed to inform the jury that the former are discretionary. The short answer to both contentions is that the instruction did not authorize or compel a verdict for *any* damages. That subject was covered in other instructions, which will be reviewed later.

■ Defendant's final claims of error as to Instruction No. 1 are that the lawfulness of the arrest was assumed, although that fact was a contested issue; that no facts were hypothesized from which the lawfulness or unlawfulness of the arrest could be determined by the jury; and that the phrase " * * * and to be carried by said police officers through the streets of St. Louis in a police conveyance to the police station and to be there held, if you so find * * * " was a circumstance in the case totally irrelevant for the purpose of liability. In an action for false arrest where, as here, the arrest is made without a warrant, the law presumes that the arrest was unlawful, and the burden of pleading the lawfulness of the arrest as an affirmative defense, and of proving it, devolves upon

the defendant. Pandjiris v. Hartman, 196 Mo. 539, 94 S.W. 270; Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68; Burton v. Drennan, 332 Mo. 512, 58 S.W.2d 740. No plea of justification was raised in defendants' answer, as was done in Frank v. Wabash R. Co., Mo., 295 S.W.2d 16. Under that state of the pleadings the defendants were entitled to introduce evidence tending to show that Brown had not instigated the arrest of plaintiff, but the lawfulness of the arrest was not a contested issue. Pandjiris v. Hartman, supra. And it was not error for the court to assume in the instruction that the arrest of plaintiff was unlawful. Engelbrecht v. Roworth, 236 Mo.App. 459, 157 S.W.2d 242. If the arrest was made without a warrant, it is only when the plaintiff's own evidence tends to show him guilty of the crime that the plaintiff must submit to the jury, by his own instruction, the issue of the unlawfulness of the arrest. Engelbrecht v. Roworth, supra. That situation, however, did not arise in the instant case. As to the phrase about which defendants complain, the fact of plaintiff's detention by the police was a necessary element of plaintiff's case. Richardson v. Empire Trust Co., 230 Mo. App. 580, 94 S.W.2d 966.

■ Having considered all of the defendants' complaints regarding plaintiff's Instruction No. 1, we turn to those leveled at plaintiff's Instructions Numbered 7 and 8, which read as follows:

" 'The Court instructs the jury that if you find in favor of the plaintiff under Instruction No. 1, then you are further instructed that if you find that in so causing the arrest of the plaintiff, if so, the defendants charged the plaintiff with the commission of larceny, if you so find, and that the plaintiff was not guilty of larceny, if so, and if you further find that the defendants caused such arrest maliciously and with intent to cause injury to plaintiff's character and reputation, if you so find, then you may, in your discretion, in addition to the actual damages awarded plaintiff, if

any, allow him such further sum by way of punitive damages as you may find and believe from the evidence as will be a proper punishment to the defendants for such conduct, if so, and a proper warning to others.' "

" 'The Court instructs the Jury that the term "malice" as used in the instructions, does not necessarily mean actual ill will or spite, but means merely intentional doing of a wrongful act without just cause or excuse.' "

Defendants have intermingled their complaints regarding these instructions, but as best we understand them the claims of error made are these: (1) the issue of punitive damages should not have been submitted to the jury since there was no substantial evidence that Brown acted maliciously; (2) the instructions did not submit any particular act which the jury could find had been intentionally done; (3) the instructions permitted the jury to award punitive damages for any act committed between September 30, 1957 and October 19, 1957; and (4) the word "malice" was improperly defined. Of these, the last shall be first. Instruction No. 8 properly defined legal malice as the intentional doing of a wrongful act without just cause or excuse. Brown v. Sloan's Moving & Storage Co., Mo., 296 S.W.2d 20; Raymond, Missouri Instructions, Vol. 2, p. 207, Sec. 4101. Next, considering only the foregoing evidence favorable to the plaintiff, which in the interest of brevity we will not repeat, we think the jury could reasonably infer that Brown intentionally gave the police an incomplete and misleading account of what had occurred between him and plaintiff, for the purpose of wrongfully causing the arrest of plaintiff, and are of the opinion that the court therefore did not err in submitting the issue of punitive damages to the jury. Winegar v. Chicago, B & Q R. Co., Mo.App., 163 S.W.2d 357; Oliver v. Kessler, Mo.App., 95 S.W.2d 1226. There is no merit to either the third or fourth complaint. The wrongful act, and the only wrongful act hypothesized, was that of causing the unlawful arrest of plaintiff.

Defendants' Point VII is that in two instances the trial court erred in admitting hearsay into evidence. The first occurred while plaintiff's witness Thurman, the detective who made the arrest, was on the stand. On redirect examination he was asked whether before he had arrested plaintiff he had read the "offense" or original report. He answered that he had, that it is given to the detectives to follow up. He was then asked whether the report contained a statement by Brown that he would prosecute in the event of an arrest. Counsel for defendants objected on the grounds that the question called for hearsay, and the objection was overruled. The witness then answered that there was a paragraph stating that if he (Brown) could identify he would prosecute if an arrest was made. Of course the testimony as to what a report contained, which was prepared by another officer and not introduced, was hearsay and improperly admitted, over timely objection. However, on direct examination by counsel for the defendants Brown was asked whether he recalled telling the police, " * * * that you would prosecute if the man was arrested. * * * " His answer was, " I don't remember if I told him that or not." Counsel then inquired "You don't deny that, though?" and Brown answered, "No, I don't.". Since the evidence improperly admitted related to a fact not disputed, the error was harmless. Lesch v. Terminal R.R. Ass'n of St. Louis, Mo., 258 S.W.2d 686; Minks v. Smith, Mo. App., 367 S.W.2d 6. The second instance of which defendants complain occurred when plaintiff was on the stand, during direct examination. He was asked whether he had found out who the person was who had made the complaint. When defendants' counsel's objection on the grounds of hearsay was overruled, counsel argued that whether the plaintiff had found out would call for a conclusion and be pure hearsay. The court then inquired of plaintiff from whom plaintiff had found out, and plaintiff answered that it was "Mr. Brown himself." Plaintiff's counsel then asked whether plaintiff had found out from Mr.

Brown himself, and plaintiff responded, "Calling down at the station they asked if this was the man that he had arrested and he said, 'Yes, that is the man.'" Defendants' counsel thereupon objected and asked that the answer be stricken and the jury instructed to disregard it, "on the grounds that is hearsay, hearsay so far as the oil company is concerned." "The Court: Overruled." Although it was evident that plaintiff's counsel was seeking to elicit from plaintiff what Brown had said at the station regarding the arrest, the objection that the testimony was " * * * hearsay so far as the oil company is concerned" was not made until after the question was answered. There is nothing in the record to indicate that the answer was given before defendants' counsel had an opportunity to object. As was pointed out in Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W. 2d 742 and Minks v. Smith, Mo.App., 367 S.W.2d 6, an objection, or a motion to strike out evidence, comes too late and will not be considered on appeal when not made at the first opportunity. Furthermore, since Brown was a defendant the evidence, though hearsay, was admissible against him as an admission against interest. State ex rel S. S. Kresge Co. v. Shain, 340 Mo. 145, 101 S.W. 2d 14. As to defendant Liberty Petroleum, that defendant admits in its brief that there was evidence from which the inference could be drawn that it was within the scope of Brown's authority to call the police and inform them of what had transpired. It would seem to follow that Brown was also acting within the scope of his employment when he appeared at the police station to identify plaintiff as the individual who had, supposedly, stolen the corporate defendants' products. The statement attributable to Brown was made while the transaction to which it related, the arrest, was still pending. In Roush v. Alkire Truck Lines, Inc., Mo., 299 S.W.2d 518, 521, it was stated, " * * * As a general rule it may be said that an admission of an agent or employee, not a part of the res gestae, 'may be received in evidence against his principal, if relevant

to the issues involved, where the agent, in making the admission, was acting within the scope of his authority, and the transaction or negotiation to which the admission relates was pending at the time when it was made. * * *'" Since those prerequisites were satisfied in the instant case it would appear that the statement was also admissible as an admission against interest so far as the corporate defendant was concerned.

Defendants further charge that the court erred in refusing to give certain instructions offered by them. By their instruction G defendants sought to tell the jury that plaintiff was not entitled to recover and its verdict should be for defendants if it found that, " * * * one of the attendants or Mr. Brown informed him (plaintiff) that if he left without paying cash they would notify the police, and that the plaintiff then told them, in effect, to go ahead and call the police, and then drove away from the station * * *." Defendant argues that, "This instruction properly submitted the defense of consent by the plaintiff to the subsequent arrest and detention by the police. * * *" We think not. In the first place the instruction did not contain the words, "consent," "arrest," or "detention." Nor would the evidence that plaintiff told the attendant or Brown " * * * in effect, to go ahead and call the police * * *" justify an inference that plaintiff thereby consented to his subsequent arrest and detention. If evidence that Brown merely called the police and fully reported all of the facts to them would not support an inference that he requested or instigated plaintiff's arrest, as defendants contended, then surely evidence that plaintiff told Brown to go ahead and call the police would not justify an inference that plaintiff thereby consented to his subsequent arrest.

Defendants likewise complain of the court's refusal to give their Instruction No. L. That instruction would have told the jury, in effect, that even if it found that plaintiff's arrest was unlawful and that

plaintiff had not committed a punishable offense, nevertheless if Brown had reasonable grounds to "suspect" that an offense had been committed for which plaintiff could lawfully be arrested, that Brown then had just cause or excuse for the arrest and neither Brown nor his employer could be required to pay punitive damages. The quoted word indicates the vice in the instruction. There is a sharp difference between a belief and a mere suspicion. Compare Leathers v. Sikeston Coca-Cola Bottling Co., Mo.App. 286 S.W.2d 393, 394, and State v. Dildine, Mo.App., 269 S.W. 653, 654. The instruction did not even require the jury to find that Brown did in fact "suspect," much less believe, that plaintiff had committed an offense. The court did not err in refusing the instruction as offered.

Defendants' eighth and final point is that the verdict for $7,500 for punitive damages is excessive. While defendants cite various cases in which verdicts for punitive damages were held to be immoderate, they do not suggest or indicate what amount they consider would have been reasonable in this case, nor by what amount they believe the instant verdict to be excessive. The chief purpose of punitive damages, as its name suggests, is to inflict punishment; the rationale being that the punishment assessed is an example and a deterrent to similar conduct. Polk v. Missouri-Kansas-Texas R. Co., 351 Mo. 865, 174 S.W.2d 176; State ex rel. Boswell v. Curtis, Mo.App., 334 S.W.2d 757. The numerous factors to be considered, as stated in State ex rel St. Joseph Belt R. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351, 356, are: " * * * Exemplary damages are inflicted by way of punishment for the doing of an act maliciously and are proportioned to the degree of malice, criminality, or contumely characterizing the act, to the age, sex, health, and character of the injured party, the intelligence, standing, and affluence of the tortfeasor, and other like circumstances. * * *" In view of the variegated nature of the factors to· be taken into account, there is no

hard and fast rule that can be adhered to, Gerharter v. Mitchellhill Seed Co., Mo.App., 157 S.W.2d 577, and each case must turn more or less upon its own peculiar facts. Walker v. St. Joseph Belt R. Co., Mo.App., 102 S.W.2d 718. Generally, punitive damages must bear some relation to *the injury*, though they need not bear any relation to the damages *allowed* by way of compensation. State ex rel. St. Joseph Belt R. Co. v. Shain, supra. Plaintiff was 58 years of age at the time of his arrest. The record reveals that some months before the arrest he had been under the care of Dr. Albert Kaplan, whose specialty was the treatment of tuberculosis, and that plaintiff had been a patient in Alexian Brothers Hospital during June and July 1957. Cross-examination revealed that in the years preceding the arrest plaintiff had at times operated his own business, and at other times had worked for various employers. At the time of the arrest plaintiff was employed as a salesman for a hearing aid company, on a commission basis. His income tax return for the year 1957 showed that during the seven months he was ·so employed· his earnings averaged $600 per month. Plaintiff testified that he had never had anything happen to him before like his arrest for larceny; that after that occurred he was unable to concentrate on his work; that he would call at a prospective purchaser's home, but his mind would drift back to being arrested; and that he therefore left the hearing aid company in December, 1957.·

Regarding the factors of malice and contumacious conduct, we have already noted that according to his own testimony when Brown called the police he gave them an incomplete and misleading account of what had occurred. In our opinion defendants' own evidence, if accepted, revealed scant justification for communicating with the police in the first place. According to Brown, the corporate defendant had admitted an indebtedness to plaintiff of $9.10 for the watered gasoline, and had authorized him to pay that amount ·to plaintiff. Assuming that on October 16, 1957, plaintiff refused to

pay the $2.65 for the gasoline and oil with which his car had been serviced, and in the manner related by Brown, no reason appears why that amount could not have been treated as a credit against the greater amount defendant Liberty Petroleum owed plaintiff. Defendants did not introduce any evidence to controvert plaintiff's testimony that he had never been arrested before, nor did they produce any evidence which impugned plaintiff's previous good character and reputation. Plaintiff was arrested and taken to the police station in a police car, where he was booked, and while his restraint was not of long duration, the fact remains that, according to Detective Thurman, there is on file in the St. Louis Police Department a record that plaintiff was arrested for larceny, which "* * * will remain there until the day he dies." In that connection it is appropriate to recall what Shakespeare said in Othello (Act III, Sc. 3, Line 155):

"Good name in man and woman, dear my lord, Is the immediate jewel of their souls; Who steals my purse steals trash; 'tis something, nothing; 'Twas mine, 'tis his, and has been slave to thousands; But he that filches from me my good name Robs me of that which not enriches him, And makes me poor indeed."

It was stated in Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, 1089, that in a matter of this nature our responsibility "* * * is to interfere with the jury's verdict upon the issue of punitive damages only where it plainly appears that the verdict was so out of all proper proportions as to reveal improper motives and an absence of honest exercise of judgment by the jury in its rendition. In other words, the power of an appellate court to revise an award of punitive damages, while it exists, is nevertheless to be exercised sparingly and in extreme cases only, since the question of the amount of such an allowance may not from its very nature be measured by any fixed rules or standards

and is therefore to be left to repose largely in the sound discretion of the jury. * * *" We note that as long ago as 1943 our Supreme Court affirmed a judgment for $9,000 for punitive damages. Polk v. Missouri-Kansas-Texas R. Co., 351 Mo. 865, 174 S.W. 2d 176. After carefully considering the evidence in the light of the factors mentioned in State ex rel. St. Joseph Belt R. Co. v. Shain, supra, we think there is no warrant for our interference with the amount of the verdict.

The judgment should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

RUDDY, P. J., ANDERSON, J., and L. F. COTTEY, Special Judge, concur.

WOLFE, J., not participating.