**Merille M. GONNELLA, Respondent,**

v.

**Ardeen K. TUCKER, Appellant.**

No. 42952.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 17, 1981.

Donald K. Gerard, Clayton, for appellant.

Gael D. Wood, Washington, for respondent.

CRIST, Judge.

Water to plaintiff's residential property (hereafter the "High School Drive residence," after its street address) comes through a line and meter box on adjoining commercial property owned by defendant. Plaintiff commenced this action for declaratory and injunctive relief and actual and punitive damages when defendant denied plaintiff's request to enter to make certain repairs to the meter box required before water service to the High School Drive residence could be restored. (Defendant's husband, as agent, did all of the acts complained of, and it is he we call "defendant" in the iteration of those acts that follows.) The trial court awarded plaintiff $2,492.50 as actual damages and $2,500.00 as punitive damages. Defendant appeals only the award of punitive damages. We affirm.

■ Defendant's first point is that it was error to make any award of punitive damages, as the evidence does not support the trial court's finding of "willful and intentional" conduct. As we recount the evidence, we include every reasonable inference that assists the party favored by the challenged trial court finding. See: *Citizens' Bank of Laredo v. Lowder*, 141 Mo. App. 603, 125 S.W. 1180 (1910).

At the time she purchased the High School Drive residence, plaintiff—recently divorced and with children at home—was residing in an older home in Webster Groves which also housed her small drapery business. Finding the Webster Groves home too old and too large to maintain alone, plaintiff purchased the smaller High School Drive residence and listed the Webster Groves home for sale. She called defendant about leasing his commercial building next door to the High School Drive residence as she hoped to relocate her drapery business there. Defendant was interested in the proposed lease, but was unpleasantly surprised by the news of plaintiff's purchase as the High School Drive property would have enhanced his property holdings.

Within a week of her purchase, plaintiff was notified by the St. Louis County Water Company that repairs must be made to the High School Drive residence's water meter box before water service terminated by the previous occupant could be reconnected. Plaintiff then learned from her plumber that her water line ran under defendant's commercial building next door, and that the meter box was under the building's concrete walk. When asked for permission to

enter and repair the meter box, defendant refused, stating (in plaintiff's words), "He had wanted [the water line] moved for a long time and this was the first what he considered edge he had and he was going to sit firm on it."

Defendant had been unsuccessful at earlier efforts to persuade plaintiff's grantor to abandon the water line. Now, upon being told by plaintiff of her predicament, he had it confirmed by conversations with water company officials. Plaintiff's subsequent entreaties to relent—that the cost of installing a new line might well exceed $5,000.00; that her family's financial situation was critical from having to maintain the two houses; that she would install a new line later, if she could just move to the High School Drive residence and sell the Webster Groves residence—met first with defendant's stolid insistence that the line be abandoned and not reconnected, and later with his offer to purchase the High School Drive residence for exactly what plaintiff paid for it. Plaintiff finally made the needed repairs, but to do so she was required to . commence this action and obtain a temporary restraining order.

The requirements in Missouri for an award of punitive damages are set out in *Summers v. Keller*, 152 Mo.App. 626, 133 S.W. 1180, 1182 (1911):

The policy of the law which authorizes the assessment of punitive damages in any case rests upon the idea that the wrongdoer deserves some punishment in addition to being required to make restitution, and to justify the award of such damages two things must occur: (1) The act complained of must be wrong and some actual damage result therefrom. (2) The wrongdoer must have known that his act was wrong, and he must have done it intending at the time to inflict injury thereby, or it must have been done under such circumstances that the law will imply the evil intent.

The alternative of implying an intent to inflict injury from the circumstances of the wrongful act was amplified in *Pashalian v. Big-4 Chevrolet Company*, 348 S.W.2d 628, 637 (Mo.App.1961) to include those instances of a "reckless disregard of another's rights and interests," recklessness being "an indifference to the rights of others and an indifference whether wrong or injury is done or not." *Brisboise v. Kansas City Public Serv. Co.*, 303 S.W.2d 619, 623 (Mo. banc 1957).

The substance of defendant's claim is that the evidence fails to establish the second requirement in *Summers v. Keller*. But the trial court reasonably could have found that defendant had known for some time that her land was burdened with both the water line and the rights therein that are plaintiff's as owner of the dominant estate. Upon learning that water service through the line had been discontinued and would remain so until the meter box was repaired, defendant denied plaintiff her right to enter and make the repairs, see, e.g., *Stotzenberger v. Perkins*, 332 Mo. 391, 58 S.W.2d 983, 987 (1933); 2 Thompson, Real Property § 428, at 669 (1980 repl.), reckoning on her desperate financial position to prevent enforcement of those rights, and hoped thereby either to force an abandonment of the line or precipitate a forced sale of the High School Drive residence which she might then acquire on favorable terms. Such a mixture of callousness and calculation is at least the kind of reckless disregard of another's rights and interests that the assessment of punitive damages may redress. The trial court did not err in finding defendant amenable to such an assessment.

■ Defendant's last point is that the punitive damages award should be set aside as excessive, in that the amount reflects bias and prejudice in the trial court and, in addition, bears no reasonable relation to the actual injury inflicted. Though defendant alludes to familiar grounds for reversing such awards, there is not even a suggestion of a factual basis in this case for doing so.

"The judgment entered by the trial court in a bench trial is presumptively correct and the party who poses the challenge has the burden of demonstrating the judgment to be erroneous. [authority omitted] ...."

*Cohen v. Crumpacker*, 586 S.W.2d 370, 374 (Mo.App.1979). Defendant does not indicate what amount she would consider reasonable, or by what amount she believes the award to be excessive. Cf.: *Wehrman v. Liberty Petroleum Company*, 382 S.W.2d 56, 66 (Mo.App.1964). Moreover, it does not necessarily follow from merely the size of the award that it is the result of bias or prejudice. See: *Cook v. Globe Printing Co.*, 227 Mo. 471, 127 S.W. 332, 353 (banc 1910).

In view of the variegated factors to be taken into account in assessing punitive damages, there is no hard and fast rule for determining whether an award is excessive, and each case must turn more or less upon its own facts. *Wehrman v. Liberty Petroleum Company*, 382 S.W.2d at 66; and see: *Helming v. Adams*, 509 S.W.2d 159, 169–70 (Mo.App.1974); *Jones v. West Side Buick Auto Co.*, 231 Mo.App. 187, 93 S.W.2d 1083, 1089 (1936). As the trial court has the advantage in gauging many of those facts and factors, the power of an appellate court to revise such an award should be exercised sparingly and in extreme cases only. *Id.* There is no showing that this is such a case.

Judgment affirmed.

REINHARD, P. J., and SNYDER, J., concur.